# SMITH *v.* REEVES.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 242.   Argued April 16, 1900.—Decided May 14, 1900.

Within the meaning of the constitutional provisions relating to actions instituted by private persons against a State, this suit, though in form against an officer of the State of California, is in fact against the State itself.

By § 3669 of the Political Code of California, which provides that any person dissatisfied with the assessment made upon him by the State Board of Equalization, may, after payment and on the conditions named in the act, bring an action against the State Treasurer for the recovery of the amount of taxes and percentage so paid to the Treasurer, or any part thereof, the State has not consented to be sued except in its own courts.

It was competent for the State to couple with its consent to be sued on account of taxes alleged to have been exacted under illegal assessments made by the state board, the condition that the suit be brought in one of its own courts.

A suit brought against a State by one of its citizens is excluded from the judicial power of the United States, even when it is one arising under the Constitution and laws of the United States, and the same rule applies to suits of a like character brought by Federal corporations against a State without its consent.

THE case is stated in the opinion.

*Mr. C. N. Sterry* for plaintiff in error.

*Mr. Tirey L. Ford* and *Mr. William M. Abbott* for defendant in error.   *Mr. George A. Sturtevant* was on their brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

THIS action was brought in the Circuit Court of the United States for the Northern District of California by the Receivers of the Atlantic and Pacific Railroad Company, a corporation created under an act of Congress approved July 27, 1866,

with authority to construct and maintain a railroad and telegraph line beginning at or near Springfield, Missouri, thence by a specified route to the Pacific Ocean. 14 Stat. 292, c. 278.

The original defendant was J. R. McDonald, as Treasurer of the State of California. He was succeeded in office by Levi Rackliffe, W. S. Green and Truman Reeves in the order named,

The relief sought was a judgment against the defendant " *as Treasurer* of the State of California," for the sum of $2272.80 with interest thereon from the date of the payment of that sum or any portion thereof to the State Treasurer, together with the costs of the action.

Before bringing suit the Receivers of the Railroad Company gave written notice to the Comptroller of the State that they intended to bring an action against the State Treasurer to recover from him the amount of the " taxes paid by the Atlantic and Pacific Railroad Company, and by the Receiver for it, to the State Treasurer as and for taxes assessed against the Atlantic and Pacific Railroad Company in the State of California for the year 1893, by the State Board of Equalization."

The action was brought under section 3669 of the Political Code of California, which is as follows:

"Each corporation, person or association assessed by the State Board of Equalization must pay to the State Treasurer, upon the order of the Comptroller, as other moneys are required to be paid into the Treasury, the state and county and city and county taxes each year levied upon the property so assessed to it or him by said board. Any corporation, person or association dissatisfied with the assessment made by the board, upon the payment of the taxes due upon the assessment complained of, and the percentage added, if to be added, on or before the first Monday in June, and the filing of notice with the Comptroller of an intention to begin an action, may, not later than the first Monday in June, bring an action against the State Treasurer for the recovery of the amount of taxes and percentage so paid to the Treasurer, or any part thereof, and in the complaint may allege any fact tending to show the illegality of the tax, or of the assessment upon which the taxes are levied, in whole or in part. A copy of the complaint and of the sum-

mons must be served upon the Treasurer within ten days after the complaint has been filed, and the Treasurer has thirty days within which to demur or answer. At the time the Treasurer demurs or answers, he may demand that the action be tried *in the Superior Court of the county of Sacramento.* The Attorney General must defend the action. The provisions of the Code of Civil Procedure relating to pleadings, proofs, trials and appeals are applicable to the proceedings herein provided for. If the final judgment be against the Treasurer, upon presentation of a certified copy of such judgment to the Comptroller, he shall draw his warrant upon the State Treasurer, who must pay to the plaintiff the amount of taxes so declared to have been illegally collected; and the cost of such action, audited by the Board of Examiners, must be paid out of any money in the general fund of the treasury, which is hereby appropriated, and the Comptroller may demand and receive from the county, or city and county interested, the proportion of such costs, or may deduct such proportion from any money then or to become due to said county, or city and county. Such action must be begun on or before the first Monday in June of the year succeeding the year in which the taxes were levied, and a failure to begin such action is deemed a waiver of the right of action."

The State Treasurer, represented by the Attorney General of the State, demurred to the complaint upon various grounds affecting the merits of the case, and also moved to dismiss the case upon the ground that the Circuit Court had no jurisdiction of the defendant or of the action.

The demurrer was sustained with leave to amend and the motion to dismiss was denied. *Reinhart* v. *McDonald, Treas'r,* 76 Fed. Rep. 403.

An amended complaint was filed but a demurrer to it was sustained, with leave to amend. No further amendment having been filed, the action was dismissed by the Circuit Court: *Smith* v. *Rackliffe,* 83 Fed. Rep. 983. That judgment was affirmed in the Circuit Court of Appeals. 59 U. S. App. 428.

Is this suit to be regarded as one against the State of California? The adjudged cases permit only one answer to this question. Although the State, as such, is not made a party de-

fendant, the suit is against one of its officers *as Treasurer ;* the relief sought is a judgment against that officer *in his official capacity ;* and that judgment would compel him to pay out of the public funds in the treasury of the State a certain sum of money. Such a judgment would have the same effect as if it were rendered directly against the State for the amount specified in the complaint. This case is unlike those in which we have held that a suit would lie by one person against another person to recover possession of specific property, although the latter claimed that he was in possession as an officer of the State and not otherwise. In such a case, the settled doctrine of this court is that the question of possession does not cease to be a judicial question—as between the parties actually before the court—because the defendant asserts or suggests that the right of possession is in the State of which he is an officer or agent. *Tindal* v. *Wesley,* 167 U. S. 204, 221, and authorities there cited. In the present case the action is not to recover specific moneys in the hands of the State Treasurer nor to compel him to perform a plain ministerial duty. It is to enforce the liability of the State to pay a certain amount of money on account of the payment of taxes alleged to have been wrongfully exacted by the State from the plaintiffs. Nor is it a suit to enjoin the defendant from doing some positive or affirmative act to the injury of the plaintiffs in their persons or property, but one in effect to compel the State, through its officer, to perform its promise to return to taxpayers such amount as may be adjudged to have been taken from them under an illegal assessment.

The case, in some material aspects, is like that of *Louisiana* v. *Jumel,* 107 U. S. 711, 726–728. That was a proceeding by mandamus against officers of Louisiana to compel them to use the public moneys in the state treasury for the retirement of certain bonds issued by the State but which it subsequently refused to recognize as valid obligations and directed its officers not to pay. This court said: "It may be, without doubt, easily ascertained from the accounts how much of the money on hand is applicable to the payment of this class of debts; but the law nowhere requires the setting apart of this fund any more than

others from the common stock. In the treasury all funds are mingled together, and kept so until called for to meet specific demands. . . . The remedy sought, in order to be complete, would require the court to assume all the executive authority of the State, so far as it related to the enforcement of this law, and to supervise the conduct of all persons charged with any official duty in respect to the levy, collection and disbursement of the tax in question until the bonds, principal and interest, were paid in full, and that, too, in a proceeding in which the State, as a State, was not and could not be made a party. It needs no argument to show that the political power cannot be thus ousted of its jurisdiction and the judiciary set in its place. When a State submits itself, without reservation, to the jurisdiction of a court in a particular case, that jurisdiction may be used to give full effect to what the State has by its act of submission allowed to be done; and if the law permits coercion of the public officers to enforce any judgment that may be rendered, then such coercion may be employed for that purpose. But this is very far from authorizing the courts, when a State cannot be sued, to set up its jurisdiction over the officers in charge of the public moneys, so as to control them as against the political power in their administration of the finances of the State. In our opinion, to grant the relief asked for in either of these cases would be to exercise such a power."

We are clearly of opinion that within the meaning of the constitutional provisions relating to actions instituted by private persons against a State, this suit, though in form against an officer of the State, is against the State itself. *In re Ayers*, 123 U. S. 443; *Pennoyer* v. *McConnaughy*, 140 U. S. 1, 10.

But it is contended that by the section of the Political Code of California above quoted the State has consented that its Treasurer may be sued in respect of the matters specified in that section, and it is argued that this case comes within the decision in *Beers* v. *Arkansas*, 20 How. 527, 529, in which it was said to be an established principle of jurisprudence in all civilized nations that while the sovereign cannot be sued in its own courts or in any other without its consent and permission, a State "may, if it thinks proper, waive this privilege, and permit itself to be

made a defendant in a suit by individuals or by another State."
So in *Clark* v. *Barnard,* 108 U. S. 436, 447: " The immunity
from suit belonging to a State, which is respected and protected
by the Constitution within the limits of the judicial power of
the United States, is a personal privilege which it may waive
at pleasure; so that in a suit, otherwise well brought, in which
a State had sufficient interest to entitle it to become a party
defendant, its appearance in a court of the United States would
be a voluntary submission to its jurisdiction; while, of course,
those courts are always open to it as a suitor in controversies
between it and citizens of other States."

It is quite true the State has consented that its Treasurer
may be sued by any party who insists that taxes have been ille-
gally exacted from him under assessments made by the State
Board of Equalization. But we think that it has not consented to
be sued except in one of its own courts. This is not expressly
declared in the statute, but such, we think, is its meaning. The
requirement that the aggrieved taxpayer shall give notice of
his suit to the Comptroller, and the provision that the Treasurer
may at the time he demurs or answers " demand that the action
be tried in the Superior Court of the county of Sacramento,"
indicate that the State contemplated proceedings to be insti-
tuted and carried to a conclusion only in its own judicial tribu-
nals. If a Circuit Court of the United States can take cogni-
zance of an action of this character, the right given to the
Treasurer by the local statute to have the case tried in the Supe-
rior Court of Sacramento County would be of no value; for, as
the jurisdiction and authority of a Circuit Court of the United
States depends upon the Constitution and laws of the United
States, it could not refuse to take cognizance of the case if right-
fully commenced in it and to proceed to final decree, nor could
it, merely in obedience to the laws of the State, transfer it to a
state court upon the demand of the State Treasurer. A Federal
court can neither take nor surrender jurisdiction except pursu-
ant to the Constitution and laws of the United States.

In *Beers* v. *Arkansas,* above cited, it was further said: " As
this permission [to be sued] is altogether voluntary on the part
of the sovereignty, it follows that it may prescribe the terms

and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it. Arkansas, by its constitution, so far waived the privilege of sovereignty as to authorize suits to be instituted against it in its own courts, and delegated to its General Assembly the power of directing in what courts, and in what manner, the suit might be commenced. And if the law of 1854 had been passed before the suit was instituted, we do not understand that any objection would have been made to it. The objection is that it was passed after the suit was instituted, and contained regulations with which the plaintiff could not conveniently comply. But the prior law was not a contract. It was an ordinary act of legislation, prescribing the conditions upon which the State consented to waive the privilege of sovereignty. It contained no stipulation that these regulations should not be modified afterwards; if, upon experience, it was found that further provisions were necessary to protect the public interest; and no such contract can be implied from the law, nor can this court inquire whether the law operated hardly or unjustly upon the parties whose suits were then pending. That was a question for the consideration of the legislature. They might have repealed the prior law altogether, and put an end to the jurisdiction of their courts in suits against the State, if they had thought proper to do so, or prescribe new conditions upon which the suits might still be allowed to proceed. In exercising this latter power the State violated no contract with the parties; it merely regulated the proceedings in its own courts, and limited the jurisdiction it had before conferred in suits when the State consented to be a party defendant."

In support of the broad proposition that the State could not restrict its consent to be sued to actions brought in its own courts, counsel refer to *Railway Company* v *Whitton*, 13 Wall. 270, 286; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 391, and *Smyth* v. *Ames*, 169 U. S. 466, 516.

*Railway Company* v. *Whitton* related to a statute of Wisconsin, giving a right of action, in certain circumstances, where the death of a person was caused by the wrongful act, neglect

or default of another person or of a corporation, and which statute provided that the action should be brought in some court established under the constitution and laws of the State. This court held that in all cases where a general right was thus conferred, "it can be enforced in any Federal court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provision of state legislation that it shall only be enforced in a state court. . . . Whenever a general rule as to property or personal rights, or injuries to either, is established by state legislation, its enforcement by a Federal court in a case between proper parties, is a matter of course, and the jurisdiction of the court, in such case, is not subject to state limitation."

*Reagan* v. *Farmers' Loan & Trust Co.* was an action by a New York corporation against the railroad commissioners of Texas and others to enjoin the enforcement of certain railroad rates established by the statutes of Texas. This court said: "Nor can it be said in such a case that relief is obtainable only in the courts of the State. For it may be laid down as a general proposition that, whenever a citizen of a State can go into the courts of the State to defend his property against the illegal acts of its officers, a citizen of another State may invoke the jurisdiction of the Federal courts to maintain a like defence. A State cannot tie up a citizen of another State, having property rights within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts. Given a case where a suit can be maintained in the courts of the State to protect property rights, a citizen of another State may invoke the jurisdiction of the Federal courts."

*Smyth* v. *Ames* was a suit in the Circuit Court of the United States against the members of the State Board of Transportation of Nebraska and other persons and corporations, to enjoin the enforcement of certain rates established by a statute of that State for railroads. In that case it was insisted that the relief sought could only be had in an action brought in the Supreme Court of Nebraska, such being the remedy provided by the statute there in question. That provision, it was contended, took from the Circuit Court of the United States its

equity jurisdiction in respect of the rates prescribed, and required the dismissal of the bills. This court said: "We cannot accept this view of the equity jurisdiction of the Circuit Courts of the United States. The adequacy or inadequacy of a remedy at law for the protection of the rights of one entitled upon any ground to invoke the powers of a Federal court is not to be conclusively determined by the statutes of the particular State in which suit may be brought. One who is entitled to sue in the Federal Circuit Court may invoke its·jurisdiction in equity whenever the established principles and rules of equity permit such a suit in that court, and he cannot be deprived of that right by reason of his being allowed to sue at law in a state court on the same cause of action. It is true that an enlargement of equitable rights arising from the statutes of a State may be administered by the Circuit Courts of the United States. *Case of Broderick's Will*, 21 Wall. 503, 520; *Holland* v. *Challen*, 110 U. S. 15, 24; *Dick* v. *Foraker*, 155 U. S. 404, 415; *Bardon* v. *Land and River Improv. Co.*, 157 U. S. 327, 330; *Rich* v. *Braxton*, 158 U. S. 375, 405. But if the case in its essence be one cognizable in equity, the plaintiff, the required value being in dispute, may invoke the equity powers of the proper Circuit Court of the United States whenever jurisdiction attaches by reason of diverse citizenship or upon any other ground of Federal jurisdiction. *Payne* v. *Hook*, 7 Wall. 425, 430; *McConihay* v. *Wright*, 121 U. S. 201, 205. A party, by going into a national court, does not, this court has said, lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality; that the wise policy of the Constitution gives him a choice of tribunals. *Davis* v. *Gray*, 16 Wall. 201, 221; *Cowley* v. *Northern Pacific Railroad Co.*, 158 U. S. 569, 583." In *Smyth* v. *Ames* the court distinctly reaffirmed what was said upon this point in *Reagan* v. *Farmers' Loan & Trust Co.*

These cases do not control the determination of the present question. The *Whitton* suit was wholly between private parties, and involved no question as to the State or the powers or acts of state officers. In the *Reagan* and *Smyth* cases the relief sought was against the proposed action of state officers or

agents, and they were not in any sense suits against the State—the relief asked being protection against affirmative action about to be taken by state officers in hostility to the rights of the respective plaintiffs.

In the present case the suit was one to compel an officer of the State, by affirmative action on his part, to perform or comply with the promise of the State as defined in its Political Code, and therefore, as we have said, it is a suit against the State. Nothing heretofore said by this court justifies the contention that a State may not give its consent to be sued in its own courts by private persons or by corporations, in respect of any cause of action against it and at the same time exclude the jurisdiction of the Federal courts—subject always to the condition, arising out of the supremacy of the Constitution of the United States and the laws made in pursuance thereof, that the final judgment of the highest court of the State in any action brought against it with its consent may be reviewed or reëxamined, as prescribed by the act of Congress, if it denies to the plaintiff any right, title, privilege or immunity secured to him and specially claimed under the Constitution or laws of the United States.

In our judgment it was competent for the State to couple with its consent to be sued on account of taxes alleged to have been exacted under illegal assessments made by the state board, the condition that the suit be brought in one of its own courts. Such legislation ought to be deemed a part of the taxing system of the State, and cannot be regarded as hostile to the General Government, or as touching upon any right granted or secured by the Constitution of the United States. If the California statute be construed as referring only to suits brought in one of its own courts, it does not follow that injustice will be done to any taxpayer whose case presents a Federal question. For, if he be denied, any right, privilege or immunity secured by the Constitution or laws of the United States and specially set up by him, the case can be brought here upon writ of error from the highest court of the State.

Again, it is contended that a State cannot claim exemption from suit by a corporation created by Congress—as was the

Atlantic and Pacific Railroad Company—for purposes author-
ized by the Constitution and laws of the United States. This
contention rests upon the ground that the Eleventh Amend-
ment—which was passed because of the decision in *Chisholm*
v. *Georgia*, 2 Dall. 419—only declares that the judicial power
of the United States shall not be construed to extend to any
suit in law or equity commenced or prosecuted against one of
the United States " by citizens of another State, or by citizens
or subjects of any foreign State," and does not forbid an action
against a State by a corporation created by Congress. It is
further said that although the present case may not be em-
braced by the clause of section 2, article III, of the Constitu-
tion, extending the judicial power of the United States to con-
troversies " between a State and citizens of another State " and
to controversies " between a State, or the citizens thereof, and
foreign States, citizens or subjects," this suit having been
brought by a Federal corporation created for national purposes,
*Osborn* v. *U. S. Bank*, 9 Wheat. 738; *California* v. *Central Pacific
Railroad*, 127 U. S. 1; *Northern Pacific Railroad Co.* v. *Amato*,
144 U. S. 465, is embraced by the clause of the same article
extending the judicial power of the United States, in express
words, " to *all* cases, in law and equity, arising under this Con-
stitution, the laws of the United States, and treaties made, or
which shall be made, under their authority."

If the Constitution be so interpreted it would follow that any
corporation created by Congress may sue a State in a Circuit
Court of the United States upon any cause of action, whatever
its nature, if the value of the matter in dispute is sufficient to
give jurisdiction. We cannot approve this interpretation.

This question is controlled by the principles announced in
*Hans* v. *Louisiana*, 134 U. S. 1, 10, 14, 16–21. That was an
action brought in the Circuit Court of the United States by a
citizen of Louisiana against that State. It was a case that
could be said to have arisen under the Constitution of the
United States; and the contention was that the Eleventh
Amendment did not exclude from the jurisdiction of the Circuit
Court a suit brought against a State by one of its own citizens,
provided it was one arising under the Constitution or laws of
the United States.

In the opinion in that case, delivered by Mr. Justice Bradley, reference was made to the question involved in *Chisholm* v. *Georgia*, and to what had been said by leading statesmen, prior to the adoption of the Constitution, in support of the general proposition that sovereignty could not, without its consent, be brought to the bar of any court at the suit of private parties or corporations. This court said : " That a State cannot be sued by a citizen of another State, or of a foreign State, on the mere ground that the case is one arising under the Constitution or laws of the United States, is clearly established by the decisions of this court in several recent cases. *Louisiana* v. *Jumel*, 107 U. S. 711 ; *Hagood* v. *Southern*, 117 U. S. 52 ; *In re Ayers*, 123 U. S. 443. Those were cases arising under the Constitution of the United States, upon laws complained of as impairing the obligation of contracts, one of which was the constitutional amendment of Louisiana complained of in the present case. Relief was sought against state officers who professed to act in obedience to those laws. This court held that the suits were virtually against the States themselves and were consequently violative of the Eleventh Amendment of the Constitution, and could not be maintained. It was not denied that they presented cases arising under the Constitution ; but, notwithstanding that, they were held to be prohibited by the Amendment referred to."

Referring to certain observations made by Hamilton, Madison and Marshall, in refutation of the doctrine that States were liable to suits, the court also said : " It seems to us that these views of those great advocates and defenders of the Constitution were most sensible and just ; and they apply equally to the present case as to that then under discussion. The letter is appealed to now, as it was then, as a ground for sustaining a suit brought by an individual against a State. The reason against it is as strong in this case as it was in that. It is an attempt to strain the Constitution and the law to a construction never imagined or dreamed of. Can we suppose that, when the Eleventh Amendment was adopted, it was understood to be left open for citizens of a State to sue their own State in the Federal courts, whilst the idea of suits by citizens of other

States, or of foreign States, was indignantly repelled? Suppose that Congress, when proposing the Eleventh Amendment, had appended to it a proviso that nothing therein contained should prevent a State from being sued by its own citizens in cases arising under the Constitution or laws of the United States, can we imagine that it would have been adopted by the States? The supposition that it would is almost an absurdity on its face."

Again: "The suability of a State without its consent was a thing unknown to the law. This has been so often laid down and acknowledged by courts and jurists that it is hardly necessary to be formally asserted. . . . 'It may be accepted as a point of departure unquestioned,' said Mr. Justice Miller, in *Cunningham* v. *Macon & Brunswick Railroad*, 109 U. S. 446, 451, 'that neither a State nor the United States can be sued as defendant in any court in this country without their consent, except in the limited class of cases in which a State may be made a party in the Supreme Court of the United States by virtue of the original jurisdiction conferred on this court by the Constitution.' Undoubtedly a State may be sued by its own consent, as was the case in *Curran* v. *Arkansas et al.*, 15 How. 304, 309, and in *Clark* v. *Barnard*, 108 U. S. 436, 447. The suit in the former case was prosecuted by virtue of a state law which the legislature passed in conformity to the constitution of that State. But this court decided, in *Beers et al.* v. *Arkansas*, 20 How. 527, 529, that the State could repeal that law at any time; that it was not a contract within the terms of the Constitution prohibiting the passage of state laws impairing the obligation of a contract. . . . It is not necessary that we should enter upon an examination of the reasons or expediency of the rule which exempts a sovereign State from prosecution in a court of justice at the suit of individuals. This is fully discussed by writers on public law. It is enough for us to declare its existence."

The present plaintiffs, as did the plaintiffs in *Hans* v. *Louisiana*, base the argument in support of their right to sue the State in the Circuit Court of the United States upon the mere letter of the Constitution. We deem it unnecessary to repeat

or enlarge upon the reasons given in *Hans* v. *Louisiana* why a suit brought against a State by one of its citizens was excluded from the judicial power of the United States, even when it is one arising under the Constitution and laws of the United States. They apply equally to a suit of that character brought against the State by a corporation created by Congress. Such a suit cannot, consistently with the Constitution, be brought within the cognizance of a Circuit Court of the United States without the consent of the State. It could never have been intended to exclude from Federal judicial power suits arising under the Constitution or laws of the United States when brought against a State by private individuals or state corporations, and at the same time extend such power to suits of like character brought by Federal corporations against a State without its consent.

The Circuit Court entertained jurisdiction of the cause and dismissed the bill. The Circuit Court of Appeals held that the Circuit Court erred in holding jurisdiction, but affirmed the order of dismissal upon the ground of want of jurisdiction in the latter court to take cognizance of such a case as is here presented. We approve the action of the Circuit Court of Appeals, and its judgment is

*Affirmed.*