## STATE OF MISSOURI v. HOMESTEADERS LIFE ASS'N, and fourteen other cases.

Nos. 9402, 9411–9423, 9432.

District Court, W. D. Missouri, W. D. July 31, 1936.

James P. Aylward and Jerome Walsh, both of Kansas City, Mo., for the State of Missouri.

John B. Gage, of Kansas City, for defendant Homesteaders Life Ass'n.

Harding, Murphy & Tucker, of Kansas City, Mo., and Rainey T. Wells, of Omaha, Neb., for defendant Sovereign Camp, Woodmen of the World.

Prescott Brown and Harding, Murphy & Tucker, all of Kansas City, Mo., and Rainey T. Wells, of Omaha, Neb., for defendant Supreme Forest Woodmen Circle.

Harding, Murphy & Tucker, of Kansas City, Mo., Edmund S. Cummings, of Chicago, Ill., and Rainey T. Wells, of Omaha, Neb., for defendant Catholic Order of Foresters.

Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., for defendants Yeomens Mut. Life Ins. Co., Standard Life Ass'n, Royal Neighbors of America, Ben Hur Life Ass'n, Independent Order of Foresters, Woman's Benefit Ass'n, and Security Benefit Ass'n.

J. Francis O'Sullivan, of Kansas City, Mo., and Otto C. Rentner, of Chicago, Ill., for defendant Aid Ass'n for Lutherans.

Nelson C. Pratt, of Omaha, Neb., and Arthur N. Adams, of Kansas City, Mo., for defendant Modern Woodmen of America.

Harzfeld, Beach, Steeper & Gordon, of Kansas City, Mo., for defendant Supreme Council Royal Arcanum.

John T. Barker and Frank Brockus, both of Kansas City, Mo., for defendant The Maccabees.

REEVES, District Judge.

The above-styled actions are suits by the superintendent of the insurance department of the state of Missouri for the statutory tax on premiums received on business transacted within the state of Missouri.

In due time after the suits were filed, each of the defendants, being a nonresident of the state, presented its petition for removal to this court.

The plaintiff has moved to remand. The several motions to remand are predicated upon the theory that the state of Missouri is the real plaintiff, and that as to it there could not be a diversity of citizenship, and therefore the cases should be remanded to the state court from which they were removed.

The cases are severally styled, "The State of Missouri, a Commonwealth, by and through its Superintendent of the Insurance Department, R. Emmet O'Malley, Plaintiff."

While the petitions of the plaintiff in each case affirm the right of recovery upon the theory that each of the defendants is a regular old line life insurance company, nevertheless, both from the petition and from the statement of counsel, and from other admitted facts, each of said defendants has heretofore been licensed to do business within the state of Missouri, and is even now permitted to carry on its appropriate business as a fraternal beneficiary association.

Because of a provision in the law in respect of fraternal beneficiary associations, exempting them from the application of the general insurance laws, plaintiff's petitions contain averments to the effect "that any such exemption would be unconstitutional as being violative of the Fourteenth Amendment of the Constitution of the United States." Whether a state can invoke on its behalf the Fourteenth Amendment need not be considered now.

It seems proper to quote pertinent and applicable statutory provisions. By article 12, chapter 37, § 5978 et seq., R.S.Mo.1929, as amended (Mo.St.Ann. § 5978 et seq., p. 4552 et seq.), relating to the subject of "Insurance," ample provisions are made for the taxation of nonresident insurance companies. This particular article is entitled "Taxation of Insurance Companies." Provision is made separately for the taxation of "Home companies."

Then, by section 5979, R.S.Mo.1929, as amended (Mo.St.Ann. § 5979, p. 4556), it is provided that: "Every insurance company or association, not organized under the laws of this state, shall, as hereinafter provided, annually pay tax upon the premiums received, whether in cash or in notes, in this state or on account of business done in this state, for insurance of life * * * at a rate of two per cent. per annum in lieu of all other taxes."

By the same article, and specifically by section 5985 and section 5987 (Mo.St.Ann. §§ 5985, 5987, pp. 4560, 4561), the superintendent of the insurance department is authorized to sue. Note the following language (Mo.St.Ann. § 5987, p. 4561): "The superintendent of the insurance department may sue and recover, in his own name, in any court in this state having jurisdiction, from any such company, the amount of taxes and license properly chargeable against such company by law, together with costs and reasonable attorney's fees, to be taxed as costs; * * *

and when such taxes are collected, the said superintendent shall pay the same to the officer entitled to receive the same."

By section 5985, supra, it is provided that: "The superintendent of the insurance department shall at once proceed to collect the same, and he is hereby empowered and authorized to employ such legal process as may be necessary for that purpose, and when so collected he shall pay the same into the state treasury."

The last provision is intended to cover those cases where the company shall fail or neglect to pay the tax provided by law.

In the Missouri legislative session of 1911 there was enacted into law a code for the regulation and supervision of fraternal beneficiary associations. This law was commonly referred to as the Mobile Act (Laws 1911, p. 284 [Mo.St.Ann. § 5990 et seq., p. 4563 et seq.]). Such legislation was prompted by an association or convention of insurance supervisors or commissioners of the several states. Such association met in convention in Mobile, Ala., in October, 1910. In conference with representatives of fraternal associations, the principles of the proposed law were agreed upon, and shortly thereafter many of the states enacted such principles into law. The General Assembly of the state of Missouri did this.

Among other provisions of the so-called Mobile Law was section 5993, R.S.Mo. 1929 (Mo.St.Ann. § 5993, p. 4565), as follows: "Except as herein provided, such societies shall be governed by this article and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter enacted shall apply to them, unless they be expressly designated therein."

By the Mobile Law fraternal beneficiary associations, though limited in the selection of beneficiaries, were permitted to issue benefit certificates or insurance policies of various forms, including those upon which reserves were accumulative.

The plaintiff has endeavored to show by the averments of the several petitions that the business carried on by the several defendants is of such nature as properly to bring them within the classification of regular old line life insurance companies, and thus and thereby subject them to the payment of the taxes imposed upon such class by statute.

The question for immediate determination is whether the state of Missouri is the party plaintiff, and, if so, whether a federal question has been raised by it so that the several actions become removable from the state court in which the suits were brought.

1. The Eleventh Amendment to the Constitution of the United States specifically limits the judicial power of the United States where a state is a party. It says that such power "shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State." This constitutional provision becomes inapplicable if a federal question should be injected into litigation by a state where such state is plaintiff.

■ In considering the question as to whether the state is a party, it has been held uniformly in recent decisions that the parties named in the proceeding are not determinative of the question as to whether the state is a party or not. In other words, nominal parties in the proceedings are not controlling on the question. The sole question is whether the state is made responsible in some way by the proceedings.

In the case of Morrill et al. v. American Reserve Bond Co. et al. (C.C.) 151 F. 305, Judge Sanborn, in speaking for himself and Judge Hook, in the Western District of Missouri, very carefully pointed out the distinction between those cases where a state is made a party through one of its officers and where it is not. In substance, Judge Sanborn said, 151 F. 305, loc. cit. 308, that a suit of this nature may be maintained in the federal court even when its determination involves the pecuniary interest of the state, if the act of the officer is purely ministerial.

The Supreme Court of the United States, in Smith v. Reeves, 178 U.S. 436, loc. cit. 439, 20 S.Ct. 919, 44 L.Ed. 1140, substantially said the same thing.

Moreover, in Tindal v. Wesley, 167 U. S. 204, 17 S.Ct. 770, 42 L.Ed. 137, the court said in effect that an officer of the state could not by the mere assertion of a right close the door of the court against a litigant who otherwise would have a right to have his contentions heard in a federal forum.

■ 2. This brings us to the important question as to whether the state of Missouri is in fact plaintiff in these cases.

In Ex parte State of Nebraska, 209 U. S. 436, 28 S.Ct. 581, 585, 52 L.Ed. 876, the Supreme Court quite directly said that, even though the state might be named as a party, unless its presence was indispensable, the jurisdiction of the federal court would not be defeated. Said the court: "If the nature of the case is such that the state is not a real party plaintiff, the Federal court will so decide for the purposes of jurisdiction, even though the state is named nominally as a party plaintiff."

Section 5985, R.S.Mo.1929 (Mo.St.Ann. § 5985, p. 4560), supra, is entitled, "Duty of Superintendent as to Delinquents, etc." This statute provides that: "If any insurance company, organized under the laws of any other state or government, doing business in this state * * * shall fail or neglect to pay the tax imposed herein, *the superintendent of the insurance department shall at once proceed to collect the same.*"

It will be observed from this statute that there is no discretion reposed in the superintendent of insurance. He "shall at once proceed to collect the same." His official act is purely ministerial and brings him quite clearly within the classification mentioned in the above-cited cases. Under this section, however, he is not authorized to sue.

Section 5987, R.S.Mo.1929 (Mo.St. Ann. § 5987, p. 4561), supra, is entitled "Superintendent May Sue for Taxes, When." This section clothes the superintendent of the insurance department with power to sue only in a limited number of cases. For instance, he may bring suit where the authority of the insurance company subject to the tax has been "suspended, revoked or withheld for nonpayment of taxes, or for any other cause, or when any company shall voluntarily withdraw from this state." Upon the happening of these conditions, "the superintendent of the insurance department may sue and recover, *in his own name,* in any court in this state having jurisdiction, from any such company, the amount of taxes and license properly chargeable against such company by law, together with costs and reasonable attorney's fees, to be taxed as costs." The superintendent is specifically permitted to bring such suit *"in his own name,* in any court in this state having jurisdiction."

It would appear from the foregoing that the lawmaking body had in mind to give the superintendent authority to sue in his own name, and not in that of the state "in any court in this state having jurisdiction." This includes the national courts. He was designated to perform this ministerial act for the state; and the Legislature, chiefly referring to nonresident corporations, made the federal court available as a forum for the adjudication of tax claims.

A similar question was determined adversely to the contention of the superintendent by the Supreme Court of the United States in Reagan v. Farmers Loan & Trust Company, 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014.

In the very recent case of Worcester County Trust Company v. Long (D.C.) 14 F. Supp. 754, Judge Brewster of the District of Massachusetts carefully and exhaustively considered the identical question discussed above and held that the state was not a party to the litigation.

■ 3. Even if the state of Missouri were the real party plaintiff in these cases, the defendants would have the right to remove because of a federal question injected into the cases by the plaintiff.

As stated above, the several defendants have been, and even now are, permitted to do business within the state of Missouri as fraternal beneficiary associations. Under the statute, "a duly certified copy or duplicate of such license shall be prima facie evidence that the licensee is a fraternal benefit society within the meaning of this article." Section 6004, R.S.Mo.1929 (Mo. St.Ann. § 6004, p. 4576).

According to the admitted facts, each of the defendants has always transacted its appropriate business under the authority of such a license. Each defendant has heretofore been classed by the state authorities as a fraternal beneficiary association, and, as such, entitled to the exemption provision above set out which relieved it of the obligation to pay the tax sued for. The superintendent of insurance recognized that fact, and by his several petitions he has endeavored to defeat such exemption by declaring same to be in contravention of the Fourteenth Amendment to the Constitution of the United States.

Apparently the superintendent of insurance interposed this constitutional question because of the ruling of the Supreme

Court in the case of State ex rel. Supreme Lodge Knights of Pythias v. Vandiver, Superintendent of Insurance Department of Missouri, 213 Mo. 187, 111 S.W. 911, 15 Ann.Cas. 283. In that case the superintendent of insurance declined to issue a license to the complainant because the business transacted by it was substantially of the same character as that transacted by the regular old line life insurance companies. The question of a tax was not in the case. Moreover, this decision was delivered several years before the enactment of the Mobile Law. At the time of the decision, fraternal beneficiary associations had no power or authority to issue certificates or policies involving the accumulation of reserves. Such certificates were legalized and specifically provided for in 1911, approximately three years after the decision in the Knights of Pythias Case. Said decision was filed in banc June 26, 1908. The peremptory right of mandamus was denied.

It must be conceded that, if the defendants are fraternal beneficiary associations in fact, and as they have been classified during their operations in Missouri, such associations are entitled to be relieved of the tax under the laws of Missouri unless such acts are unconstitutional enactments.

The defendants are standing on the law as it is written, and they seek relief from the tax burden because of such written law.

The superintendent of the insurance department seeks to overcome this right and this exemption by a direct challenge to the validity of the legislation relied on by the defendants. The superintendent of insurance, therefore, brings into the case in limine a constitutional question. This question thus brought into the case would defeat and overcome the exemption claimed by the defendants, if plaintiff's theory should be sustained, whereas, if the interpretation should sustain the contention of the defendants, the claim for taxes would be defeated.

Under such circumstances, a defendant may remove the controversy to the federal court, even though there is not a diversity of citizenship. Southern Pacific R. R. Co. v. California, 118 U.S. 109, loc. cit. 112, 6 S.Ct. 993, 30 L.Ed. 103; Cohens v. Virginia, 6 Wheat. 264, 5 L.Ed. 257; 54 C. J. 23; Port Royal & A. Ry. Co. v. South Carolina (C.C.) 60 F. 552.

4. In these cases the plaintiff is positively and unequivocally asserting rights under the Constitution of the United States and is invoking in his behalf the Fourteenth Amendment. By that amendment to the Constitution he seeks to invalidate a legislative enactment.

The case of Arkansas v. Kansas & Texas Coal Co., 183 U.S. 185, 22 S.Ct. 47, 46 L.Ed. 144, does not apply, for the reason that, in that case, the plaintiff state merely anticipated a defense to be interposed by the defendant, and the state did not seek to recover, as in this case, by breaking down its own statutory barriers.

5. Able counsel for the superintendent of insurance rely confidently on Ferguson, Shore Inspector, v. Ross (C.C.) 38 F. 161, 3 L.R.A. 322. This case has been followed and approved uniformly by all of the courts, including the Supreme Court of the United States. In the Ross Case, the court declared that, while the suit was brought in the name of an individual, yet, nevertheless, the state was the real party in interest. The suit was one to enforce a police regulation of the state. The plaintiff sought to collect a penalty for the violation of a police regulation. Clearly the state was a party. Only a state can enforce its own police regulations, and, though the prosecution of the suit for a penalty might be in the name of an individual, yet it is the state seeking to enforce its police statutes and maintain its police authority.

In the case now under consideration, the superintendent of the insurance department is asserting rights and claims, which, if sustained, would gravely involve the property rights of each of the defendants. Under all of the authorities, a state official is not permitted wrongfully to invade or even challenge the rights, privileges, and immunities of individuals and then prevent such persons from asserting their rights in an appropriate federal forum. A state official is prohibited from claiming that his wrongful act is that of the state. It is not meant to imply that the superintendent of the insurance department cannot upon the trial of the cases obtain an adjudication in accordance with his contention. It is only implied that, if he is wrong, and a live and substantial controversy is raised, then, if it should be determined that his act is an illegal one, the jurisdiction of the federal court should not be denied.

In the Virginia Coupon Cases (Poindexter v. Greenhow), 114 U.S. 270, loc. cit. 290, 291, 5 S.Ct. 903, 914, 962, 29 L.Ed. 185, the Supreme Court not only denied that the state was a proper party, but, in effect, rebuked the treasurer of the city of Richmond who was collecting taxes for the state of Virginia. The treasurer was supported in his action by an express statute of the state. He seized certain property of the plaintiff for unpaid taxes. The taxpayer brought suit against the treasurer for the recovery of such specific personal property. There was no controversy but that the treasurer was acting for the state of Virginia and under a statute of the state.

The court held that he was acting under an illegal statute, that he had exceeded his authority, and that the suit was against him and not against the state. The court said that, while the maxim that "the king can do no wrong has no place in our system of government; yet it is also true, in respect to the state itself, that whatever wrong is attempted in its name is imputable to its government, and not to the state, for, as it can speak and act only by law, whatever it does say and do must be lawful. That which, therefore, is unlawful because made so by the supreme law, the constitution of the United States, is not the word or deed of the state, but is the mere wrong and trespass of those individual persons who falsely speak and act in its name. * * *

"This distinction is essential to the idea of constitutional government. To deny it or blot it out obliterates the line of demarcation that separates constitutional government from absolutism, free self-government based on the sovereignty of the people from that despotism, whether of the one or the many, which enables the agent of the state to declare and decree that he is the state; to say 'L'Etat, c'est moi.' Of what avail are written constitutions, whose bills of right, for the security of individual liberty, have been written too often with the blood of martyrs shed upon the battle-field and the scaffold, if their limitations and restraints upon power may be over-passed with impunity by the very agencies created and appointed to guard, defend, and enforce them; and that, too, with the sacred authority of law, not only compelling obedience, but entitled to respect? And how else can these principles of individual liberty and right be maintained, if, when violated, the judicial tribunals are forbidden to visit penalties upon individual offenders, who are the instruments of wrong, whenever they interpose the shield of the state? The doctrine is not to be tolerated. The whole frame and scheme of the political institutions of this country, state and federal, protest against it. Their continued existence is not compatible with it. It is the doctrine of absolutism, pure, simple, and naked, and of communism which is its twin, the double progeny of the same evil birth."

In the Virginia Coupon Cases from which the above quotation was taken, four of the nine justices dissented upon the ground that it was a suit against the state of Virginia.

6. It will be noted that all of the foregoing authorities were cases where suits had been instituted against the state or against officers of the state. In the case now under consideration the superintendent of the insurance department of the state of Missouri is the plaintiff. If acting for the state in such way as to make the state the real party, then the state is subject to the rule that, when a state voluntarily places itself in the position of a suitor, it will be held to have laid aside its sovereignty and to have taken on the garb of an ordinary suitor so far as concerns all proper matters of adjudication growing out of the cause sued on. 25 R.C.L. § 46, p. 410; 59 C.J. § 469, p. 315; United States v. Diamond Coal & Coke Co. (C.C.A.) 254 F. 266, loc. cit. 268.

This case is far different from the Virginia Coupon Cases where four of the judges dissented because in one of the cases the treasurer was supported by a state statute. The plaintiff challenged the constitutional validity of that statute and was upheld by the court. In these cases the superintendent of the insurance department is challenging the constitutional validity of an express statute. In other words, he must remove a statutory barrier before he can collect the taxes claimed. Moreover, the immunity of the state from suit does not relieve officers of the state from responsibility for illegal trespasses or the wrongful invasions of the rights of an individual even though they act or assume to act under the authority and pursuant to the directions of the state. Hopkins v. Clemson College, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890, 35 L.R.A.(N.S.) 243.

7. There are many other reasons for the contention that the state is not a party

to these actions. In 59 C.J. § 480, p. 322, it is said: "A state may become a party litigant only through the instrumentality of an agent or person designated by statute, or empowered by recognized principles of law, to act for it in the matter at hand. Authority to institute or defend actions on behalf of a state usually resides in the attorney-general or other executive law officer of the state."

This general principle of law is specifically re-inforced by an enactment of the state of Missouri. By section 11276, R.S.Mo.1929 (Mo.St.Ann. § 11276, p. 586), it is provided that: "The attorney-general shall institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations in whatever court or jurisdiction such action may be necessary; and he may also appear and interplead, answer or defend, in any proceeding or tribunal in which the state's interests are involved."

In the case of State ex rel. v. Williams, 221 Mo. 227, loc. cit. 261, 120 S.W. 740, 749, the Supreme Court of Missouri in banc said: "The lawmaking power charged the Attorney General with the duty of conducting *all litigation* on behalf of the state." In that case the court determined that the circuit attorney of the city of St. Louis could not make the state a party by naming it as such and that the circuit attorney was liable to give bond, because, as the court said, the use of the name of the state was entirely unauthorized.

In the case of State ex rel. Westhues v. Sullivan, 283 Mo. 546, loc. cit. 569, 224 S.W. 327, 331, the Supreme Court said: "The real question is whether or not the things pleaded are matters localized to Cole county or whether the state's interest in the proceeding is one of broad expanse, and covering a matter having a state situs rather than a county situs. If the latter, the state must proceed through the Attorney General."

It must be concluded from the care with which the legislative body of the state has guarded against the state becoming a litigant at the instance of the public officers of the state that it was not intended that the state should ever become a party save only at the instance of the Attorney General; and, if it should waive its immunity from suit and become a defendant, then it could only be represented by the Attorney General of the state. The Legislature intended that the superintendent of the insurance department could sue in his own name. By that enactment it was not intended to repeal or alter the laws previously made. It became an individual suit of the superintendent of insurance.

It is not necessary to discuss the many other cases presented and analyzed by diligent counsel on both sides of these controversies.

In view of all that has been said, it is obvious that the court is entirely justified in denying the motions to remand. Jurisdiction will therefore be retained by this court.

Exceptions reserved to the superintendent of insurance in each case.