**PEOPLE OF PUERTO RICO v. NATIONAL CITY BANK OF NEW YORK.**

No. 3709.

Circuit Court of Appeals, First Circuit.

May 29, 1942.

William Cattron Rigby, of Washington, D. C. (George A. Malcolm, of San Juan, P. R., and Nathan R. Margold, of Washington, D.C., on the brief), for appellant.

E. T. Fiddler, of San Juan, P. R. (Fiddler, McConnell & Gonzalez, of San Juan, P. R. on the brief; H. S. McConnell and Jorge M.

Morales, both of San Juan, P. R., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The few facts needed to understand the questions of law presented by this appeal may be stated briefly. The appellee, The National City Bank of New York, on November 4, 1940, filed a complaint in the District Court of the United States for Puerto Rico praying for the foreclosure of a mortgage which it held on a parcel of land situated in Puerto Rico. This mortgage was dated June 18, 1928, and was recorded on July 16, 1928. The defendants named in the complaint were the mortgagors, the United States of America as second mortgagee, and The People of Puerto Rico by whom the property had been purchased and to whom it had been conveyed by the tax collector of that island for non-payment of property taxes and Workmen's Compensation premiums due from the mortgagors. The property taxes for which the property was sold were those assessed upon the mortgaged property for the fiscal years 1926–1927 to 1937–38, both inclusive, which, with surcharges and penalties, aggregated $1,664.07. The Workmen's Compensation premiums included in the sale price were for the fiscal years 1929–1930 to 1932–1933, both inclusive, which with surcharges aggregated $284.27. The tax sale was held on April 25, 1939, and a certificate of the sale was issued to The People of Puerto Rico on November 4, 1939.

After a motion to dismiss filed by The People of Puerto Rico had been denied, and after The People of Puerto Rico had answered on the merits, the plaintiff bank filed a motion for summary judgment in which it recited that the defendants mortgagors and the defendant United States of America had filed answers admitting all of the allegations of the complaint, and that the defendant, The People of Puerto Rico, had in its answer admitted so many allegations of fact "That there is no genuine issue as to any material fact, and plaintiff is entitled to a judgment as a matter of law." The District Court granted this motion and ordered the mortgaged property sold and the proceeds of the sale distributed. In its orders of distribution the court below did not give The People of Puerto Rico priority over the mortgage to the extent of the full amount of the property taxes and Workmen's Compensation premiums for which the mortgaged property had been sold, plus surcharges and penalties thereon, but gave it priority only in the sum of $455.62, which is the amount of the property taxes assessed against the property for the year in which the tax sale was held and for the three preceding years, plus surcharges, interest and penalties, and The People of Puerto Rico appealed.

■ The appellant does not, nor can it successfully, contend that the court below erred in failing to award payment to it, in advance of payment of the mortgage debt, of a sum in excess of the amount of the property taxes for the year of the tax sale and the three prior fiscal years. Banco Popular de Puerto Rico v. Francisco A. Ramirez Vega, decided by the Supreme Court of Puerto Rico on November 14, 1940. 57 D. P.R. (Spanish Edition) 618. What the appellant does contend is that the District Court erred in not dismissing the complaint as to it on the ground (1) that The People of Puerto Rico, a sovereign body, had not given its consent to be sued in actions brought to enforce mortgage liens against property purchased by it at a public sale held to collect property taxes, and (2) that if the appropriate statute should be construed as a grant of consent by The People of Puerto Rico to be named as defendants in such actions, the consent is only to suits brought in the courts of Puerto Rico, not to suits brought in courts of the United States sitting in Puerto Rico.

The answers to both of these contentions depend upon the construction of Act No. 14 of August 24, 1933. Acts and Resolutions of the First Special Session of the Thirteenth Legislature of Puerto Rico, 1933, p. 76. This Act is entitled "An Act to Declare Mortgage Credits and Crop Loans to be Liens Having Preference Over Any Other Charge or Lien for Taxes or for Quotas for Workmen's Compensation, or for Any Other Cause, Except Territorial Taxes; to Give This Act a Retroactive Effect; to Authorize Suits Against The People of Puerto Rico; to Establish Penalties, and for Other Purposes." Section 1 reads: "With the exception of the taxes on the encumbered property for three years and for the current year, mortgage credits and crop loans are hereby declared to be liens having preference over any other charge or lien for taxes or for any other cause." Section 2 provides: "The priority or preference among mortgage credits and crop loans shall be the same as now determined by the laws in force"; Section 3 gives the Act retroactive effect, and Section 4

provides criminal penalties for "Any person who, through false and fraudulent representations, executes any simulated document," and registers it "for the purpose of derogating the preferred right of The People of Puerto Rico for income taxes or quotas of workmen's compensation".

Section 5, the section with which we are primarily concerned, reads: "The taxes levied by the Income Tax Law of 1924 and the quotas for workmen's compensation, their penalties, surcharges and interest, shall be collected by the Treasurer of Puerto Rico through the same attachment proceedings as those established by law for the collection of property taxes, but the attachment made on real property and real rights shall have preference only from the date of its registration in the registry, and solely over liens and charges subsequent to said dated." The section then, after providing administrative procedures for the registrar of property and the treasurer of Puerto Rico, concludes with the proviso "That if The People of Puerto Rico is awarded, for the collection of *this tax*[1] and the surcharges thereon, a property subject to a prior lien, the owner of such lien may execute it against the said property, making The People of Puerto Rico the party defendant in the proceedings followed, for which The People of Puerto Rico grants its consent."

The appellant does not deny that the appellee's lien is superior to part of the taxes and to the quotas for Workmen's Compensation for which the property was sold, but it contends, to quote from its motion to dismiss, that by the proviso of Section 5 it "has not given its consent to be made a party defendant in this case where the property involved, * * * was purchased by The People of Puerto Rico at public tax sale for the collection of property taxes and workmen's compensation premiums, their surcharges and penalties", but that by the above proviso "The People of Puerto Rico grants its consent to be sued only in cases where the property involved has been sold to The People of Puerto Rico for the collection of income taxes and quotas for workmen's compensation, their surcharges and penalties and interest." In support of this contention it is argued that the words "this tax" must be taken literally to refer back only to what is contended are their immediate antecedents in the first sentence of Section 5, that is, "taxes levied by the Income Tax Law of 1924" and "quotas for workmen's compensation, their penalties, surcharges and interest." We do not agree.

██ Obviously the singular number is inappropriate to refer back to plural antecedents and we cannot single out for reference either income taxes levied under the Act of 1924 or quotas for Workmen's Compensation or property taxes because all are grouped together and accorded similarity of treatment. Thus the words "this tax" are, taken literally, meaningless in their context, and from this we conclude that they must have been used by the legislature inadvertently for the words "these taxes".

So construed the words refer back not only to both income taxes levied under the 1924 Act and quotas for Workmen's Compensation, but also to property taxes and this we think must have been just what the legislature intended to do. Section 1, of Act No. 14, gives "mortgage credits and crop loans" priority, "with the exception of the taxes on the encumbered property for three years and for the current year" "over any other charge or lien for taxes", and the first sentence of Section 5, reiterates the pre-existing law by providing that income taxes levied under the Act of 1924 and Workmen's Compensation quotas shall be collected "through the same attachment proceedings as those established by law for the collection of property taxes." Laws of Puerto Rico, 1925, Act No. 74, § 83; Laws of Puerto Rico, 1918, Act No. 10, § 11, par. 3. From the evident desire of the legislature of Puerto Rico to subordinate the liens which it created to secure the taxes of the three kinds here under consideration, with the exception of taxes for the current year and the three years last past, to prior mortgages, and from the equally evident legislative intention that all three taxes should be collected "through the same attachment proceedings", there is every reason to suppose that the legislature also intended to permit the naming of The People of Puerto Rico as a party defendant in suits brought by prior lienors to enforce their liens against property sold to The People of Puerto Rico not for only two of the taxes mentioned but for all three of them. Only by this construction of the statute can there be achieved that uniformity in the tax system which the legislature of Puerto Rico clearly felt was desirable, for to construe the statute as the appellant would have us would result in the

---

[1] Italics supplied.

drawing of an arbitrary and apparently meaningless distinction between property taxes on the one hand and income taxes and quotas for workmen's compensation on the other. Thus we agree with the court below that The People of Puerto Rico, in Act No. 14, of 1933, gave its consent to be named as a party defendant "in the proceedings followed" by a mortgage lienor for the enforcement of his lien against property awarded to The People of Puerto Rico for the collection of any tax.

The appellant's further contention that its consent to be sued embraces only suits brought in its own courts remains to be considered. We find in the statute no language expressing any such limitation and from this it follows that the case of Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L. Ed. 1140, upon which the appellant relies, is not in point. The language of the proviso is broad and it is not limited either directly or by implication. We agree with the District Court that "The expression 'proceedings followed' means a proceeding in any court having jurisdiction of the subject-matter". Federal Land Bank of Baltimore v. Cruells, Dist. Court of U. S. for Puerto Rico, not reported in the Federal Supplement but copied at length in the transcript of record of the case at bar. Thus, since the District Court had jurisdiction on the grounds of diversity of citizenship and amount in controversy, it follows that the complaint was properly brought in the court below.

The appellant further argues that "under the laws of Puerto Rico the mortgagee here was required to redeem the property from the sale for the property taxes,—if it wanted the property". We do not so understand the law. Since part of the taxes for which the property was sold were assessed for years prior to the year of the tax sale and the three preceding years, it was sold to collect in part taxes which did not give rise to liens superior to that of the mortgagee-bank. Thus, if the bank had elected to redeem the mortgaged property from the tax sale it could only have protected itself by a payment under protest of the taxes for which the property was offered for sale, but "The statutory action for the recovery of taxes paid under protest is not available to a mortgagee as a remedy for the protection of his superior liens from the results of a possible, threatened or impending sale of the mortgaged property for taxes in case such sale should not be made subject to the mortgage lien." Franceschi v.

Treasurer, 47 P.R.R. 445, cited with approval in Banco Popular de Puerto Rico v. Vega, supra. In view of the improbability that the legislature of Puerto Rico intended to place a mortgagee in a position where, to protect his lien, he had to pay taxes which gave rise to a lien junior to his and which he could not recover back, it seems to us that the bank was within its rights in asserting its lien against The People of Puerto Rico in foreclosure proceedings.

The judgment of the District Court is affirmed with costs to the appellee.