# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2504

_____

| | | |
|---|---|---|
| Grand River Enterprises Six Nations, Ltd., | * | |
| | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| Southwestern Trading Co., Inc.; The Ritchie Grocer Co., | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Appeal from the United States |
| Heber Springs Wholesale Grocery, Inc., | * | District Court for the |
| | * | Western District of Arkansas. |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Mike Beebe, in his official capacity as Attorney General, State of Arkansas, | * | |
| | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: September 26, 2006
Filed: October 18, 2006

_____

Before MURPHY, HANSEN, and RILEY Circuit Judges.

_____

MURPHY, Circuit Judge.

Grand River Enterprises Six Nations, Ltd., a Canadian cigarette manufacturer owned by members of the Iroquois Confederacy, and Heber Springs Wholesale Grocery,[1] an Arkansas distributor of tobacco products, moved for a preliminary injunction to enjoin Arkansas Attorney General Mike Beebe from removing Grand River from the state's Approved for Sale Tobacco Products Directory and from enforcing a ban on its products. The district court[2] denied the motion, concluding that the requested relief was barred by the Eleventh Amendment. Grand River and Heber Springs appeal, and we affirm.

This case arises out of Grand River's ongoing challenge to Arkansas's tobacco settlement legislation. In 1998 Arkansas, as well as 45 other states and several territories, settled claims against the four major tobacco companies in the United States for damages caused by smoking. The resulting agreement, known as the Master Settlement Agreement (MSA), requires the tobacco companies to make annual payments to the settling states and in return shields them from future liability to the states for costs associated with tobacco use. Other tobacco companies which were not parties to the original settlement were encouraged to join the MSA. The MSA also offered incentives to the settling states to enact "Escrow Statutes" regulating cigarette manufacturers who chose not to join the settlement.

In 1999 Arkansas enacted just such a statute, which requires all tobacco manufacturers doing business in the state either: (a) to join the MSA as a Participating Manufacturer or (b) as a Non-Participating Manufacturer (NPM), to deposit annually a sum of money into escrow based on the number of cigarettes sold in Arkansas. Ark.

---

[1]The other named parties did not join the motion for preliminary injunction and are not parties to this appeal.

[2]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

Code Ann. § 26-57-261. Funds deposited by NPMs are to be held in escrow for twenty five years, to satisfy any future judgment Arkansas might obtain against a manufacturer. Payments are capped at an upper limit, and NPMs are entitled to a refund of any deposits made in excess of this upper limit. A 2005 amendment, referred to as the Allocable Share Amendment, raised this upper cap, making Grand River ineligible to receive the refunds to which it had previously been entitled.

In March of 2005, Grand River and its Arkansas distributors (collectively Grand River) sued Attorney General Beebe in the Western District of Arkansas, seeking a declaratory judgment and injunctive relief against the application of the Allocable Share Amendment (the Amendment). They alleged that the Amendment's method for calculating escrow deposits violated numerous provisions of federal law, including the Sherman Act, the dormant Commerce Clause, and the Due Process Clause of the Fourteenth Amendment.

The Attorney General moved to dismiss the claims, and on March 6, 2006 the district court dismissed all claims for prospective relief. The only claim to survive was a challenge to the Amendment's retroactive imposition of increased escrow obligations based on cigarettes sold in 2004. Then on March 14 the district court denied as moot Grand River's motion for a preliminary injunction to enjoin application of the Amendment because the parties had agreed to maintain the status quo with respect to the disputed escrow deposit based on 2004 sales. Grand River appealed, seeking to have this court consider the merits of its underlying constitutional and antitrust claims, most of which had been dismissed by the district court in its March 6 order. Its appeal was dismissed for lack of a final reviewable order.

Having not obtained its desired relief and with the deadline for annual escrow deposits approaching, Grand River applied to join the MSA on April 3, 2006. Participation in the MSA would have put Grand River in compliance with the Escrow

Statute and made escrow deposits unnecessary. Its application was not immediately granted, however, since approval by the settling states and the Participating Manufacturers was required. Grand River then offered to pay Arkansas a significantly reduced but nonrefundable lump sum in lieu of making its escrow deposit due on April 17. The Attorney General rejected this offer.

Arkansas law directs the Attorney General to remove Non-Participating Manufacturers from the Approved for Sale Tobacco Products Directory for failure to comply with the Escrow Statute. Ark. Code Ann. § 26-57-1303(b)(1). Once delisted, a company can no longer legally sell its products in Arkansas. Id. § 26-57-1303(c)(1)(B). The Attorney General's decisions with respect to delisting are "subject to review by the filing of a civil action for prospective declaratory or injunctive relief," and the Pulaski County Circuit Court has exclusive jurisdiction over such actions. Id. § 26-57-1307(a).

On April 27, 2006, Grand River again moved for a preliminary injunction, this time asking the district court to enjoin the Attorney General from delisting it or banning the sale of its products under § 26-57-1303 for failing to make its escrow deposit until its admission to the MSA could be secured. Grand River indicated that it did not intend to make the required escrow deposit, but argued that it was attempting to comply with the Escrow Statute by joining the MSA and that it would be irreparably harmed if its products were banned from the market. The district court denied the motion for preliminary injunction on May 3, 2006, ruling that the requested relief was barred by the Eleventh Amendment because Grand River's request rested solely on state law. It reasoned that although Ark. Code Ann. § 26-57-1307(a) could not strip the federal courts of jurisdiction over claims which they could otherwise properly hear, the legislation indicated Arkansas's intent to retain its sovereign immunity.

Grand River now appeals from the district court's denial of its second motion for preliminary injunction. In its briefs Grand River has restated its earlier challenges to the Allocable Share Amendment which were previously dismissed by the district court, without clearly explaining their relevance to the present appeal. It also suggests that the MSA application procedure is constitutionally defective and that the Arkansas legislature did not–and could not–deprive a federal court of jurisdiction by vesting review of delisting decisions exclusively in Pulaski County Circuit Court. The Attorney General has moved for summary disposition and also for dismissal. He argues that we should not consider claims which were not raised by Grand River in its complaint, that this appeal is barred by the Eleventh Amendment, and that there is no final judgment permitting Grand River to appeal dismissal of its constitutional and antitrust claims.

We have jurisdiction to review a district court's denial of a preliminary injunction motion under 28 U.S.C. § 1292(a)(1). Although we review the denial of a preliminary injunction for abuse of discretion, we review de novo the district court's legal conclusions about the reach of the Eleventh Amendment. See Entergy Ark., Inc. v. Nebraska, 241 F.3d 979, 987 (8th Cir. 2001).

The Eleventh Amendment protects states from being sued in federal court without their consent and also bars suits against state officers acting in their official capacities when the state itself is "the real, substantial party in interest." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945). While claims against state officers which seek only prospective relief are not barred, see Edelman v. Jordan, 415 U.S. 651 (1974), this exception is available only when a plaintiff seeks to vindicate a *federal* right. Absent waiver by the state, a federal court has no power to order a state officer exercising delegated authority to comply with duties imposed by state law. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).

Even when read generously, Grand River's second motion for preliminary injunction raised nothing more than state law claims. Nowhere in the motion did Grand River allege that Ark. Code Ann. § 26-57-1303 violates federal law. Indeed, it failed to pinpoint any specific legal provision, state or federal, that would be violated by its delisting. At most, it took issue with the Attorney General's refusal to treat its unsuccessful attempt to join the MSA as satisfaction of the Escrow Statute's requirements.

A state may waive its sovereign immunity, generally in one of two ways: either by voluntarily invoking the jurisdiction of the federal courts or by making a "clear declaration" that it intends to submit itself to federal jurisdiction. See College Sav. Bank v. Fla. Prepaidpostsecondary Ed. Expense Bd., 527 U.S. 666, 675-76 (1999) (citations omitted). Neither situation is present here. Arkansas did not consent to be sued in federal court simply by authorizing manufacturers to sue in its own courts. See Smith v. Reeves, 178 U.S. 436 (1900). Moreover, the fact that such suits are exclusively assigned to Pulaski County Circuit Court, see Ark. Code Ann. § 26-57-1307, undercuts any suggestion that Arkansas has submitted itself to federal jurisdiction.

Grand River makes no effort to argue that federal courts have the power to enjoin the Attorney General on the basis of state law alone. Instead, it attempts to supply two federal law arguments against delisting which were not presented in its original motion for preliminary injunction. First, it argues that the Allocable Share Amendment violates federal constitutional and antitrust law, attempting to resurrect the claims which were dismissed by the district court in its March 6 interlocutory order. Because these challenges to the Allocable Share Amendment, Ark. Code Ann. § 26-57-261, are not related to the subject of this appeal which is from the district court's denial of a preliminary injunction against Section 26-57-1303, they need not be addressed. See International Ass'n of Machinists & Aerospace Workers v. Soo

Line R.R., 850 F.2d 368, 374 (8th Cir.1988) (en banc) (limiting the court's inquiry on review to "those issues directly related to the injunction"). Second, Grand River argues for the first time on appeal that the MSA application procedure violates the Commerce Clause of the federal Constitution by permitting other states and competitors to control admissions. We decline to address these arguments since they were never presented to the court below. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

Since Grand River made no argument to the district court that enforcement of Section 26-57-1303 would violate federal law, the district court properly concluded that the Eleventh Amendment barred the injunctive relief sought. We see no abuse of discretion or error of law in its decision to deny the motion for a preliminary injunction.

We accordingly affirm the order of the district court denying a preliminary injunction and dismiss as moot the Attorney General's motions to dismiss and for summary disposition.

_____