MARCH 18, 1974

No. 73–729. CORPORATION COMMISSION OF OKLAHOMA ET AL. *v.* FEDERAL POWER COMMISSION ET AL. Affirmed on appeal from D. C. W. D. Okla.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE STEWART and MR. JUSTICE POWELL join, dissenting.

> "There was a young lady from Niger
>     Who smiled as she rode on a tiger.
> They returned from the ride
>     With the lady inside,
> And the smile on the face of the tiger."

When Congress enacted the Natural Gas Act in 1938, 52 Stat. 821, 15 U. S. C. § 717 *et seq.*, the state regulatory agencies were among its strongest supporters.[1] For, without supplanting any of the existing authority of the state agencies, the Act was intended to provide a powerful regulatory partner, the Federal Power Commission, which could regulate activities where the state bodies could not. As the Senate Report on the bill stated:

> "The bill takes no authority from State commissions, and is so drawn as to complement and in no manner usurp State regulatory authority, and contains provisions for cooperative action with State regulatory bodies." [2]

Yet the Court today affirms a holding of the District Court which permits the Federal Power Commission to sue the Oklahoma Corporation Commission and enjoin the enforcement of those state agency orders which the court finds violate either the Natural Gas Act or the Commerce Clause of the United States Constitution. After this decision, the state regulatory agencies must surely feel a special kinship with the young lady from Niger.

---

[1] S. Rep. No. 1162, 75th Cong., 1st Sess., 2–3 (1937).

[2] *Id.*, at 2. This Court has recognized that the Act was not intended to deprive States of their prior authority:

"The Act, though extending federal regulation, had no purpose or effect to cut down state power. On the contrary, perhaps its primary purpose was to aid in making state regulation effective, by adding the weight of federal regulation to supplement and reinforce it in the gap created by the prior decisions. The Act was drawn with meticulous regard for the continued exercise of state power, not to handicap or dilute it in any way." *Panhandle Eastern Pipe Line Co.* v. *Public Service Comm'n of Indiana,* 332 U. S. 507, 517–518 (1947).

The District Court judgment which is here affirmed arose out of an action brought by appellee Federal Power Commission against appellant Corporation Commission of Oklahoma in the United States District Court for the Western District of Oklahoma. The complaint alleged that various orders which had been issued by the Oklahoma Commission were invalid under the Commerce Clause and also conflicted with the authority of the Federal Power Commission granted by the Natural Gas Act. The three-judge District Court which was convened agreed with the contentions of the Federal Power Commission, and enjoined enforcement of the orders of the Oklahoma Commission. 362 F. Supp. 522.

My disagreement with the Court's summary affirmance of this judgment stems, not from any disagreement with the substantive holding of the District Court, but with what seems to me the more important holding that the Federal Power Commission has authority to institute an action such as this at all. Despite the total absence of precedent for such litigation by the Federal Power Commission, and language in the Natural Gas Act which, at least on its face, seems to preclude it, the Court chooses to summarily affirm. At the least, I feel the question deserves plenary consideration.

## I

The major share of the Natural Gas Act as it presently exists was passed by Congress in 1938 with the recognition that "the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest." [3]  Congress recognized

---

[3] 15 U. S. C. § 717 (a).

at that time that state regulatory agencies, with authority over intrastate sales and transportation of natural gas, were unable to deal effectively with interstate sales and transportation of that resource. The States themselves acknowledged their inadequacy in this area, and earnestly supported the bill as a supplement to the jurisdictions of their own regulatory agencies.[4] The Act specifically stated that it "shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."[5] There can be no doubt, I think, that the autonomy of the state regulatory agencies and their spheres of influence were to be preserved.[6]

The Act grants to the Federal Power Commission extensive authority to regulate the interstate transportation and sale of natural gas. It makes unlawful the establishment of rates and charges which are not "just and reasonable,"[7] and further grants to the Commission the power to establish just and reasonable rates where natural gas companies have not done so.[8] "Any State, municipality, or State commission" may file a complaint with the Commission relating to "anything done or omitted to be done by any natural-gas company in contravention of the provisions" of the Natural Gas Act.[9] The Commission is then empowered to hold hearings on

---

[4] See n. 1, *supra*.

[5] 15 U. S. C. § 717 (b).

[6] The Court in *Panhandle Eastern Pipe Line Co., supra,* stated: "Congress, it is true, occupied a field. But it was meticulous to take in only territory which this Court had held the states could not reach." 332 U. S., at 519.

[7] 15 U. S. C. § 717c (a).

[8] *Id.,* § 717d (a).

[9] *Id.,* § 717*l*.

the complaint,[10] and the parties are given the right of appeal from any resulting order of the Commission to the appropriate Court of Appeals.[11]

The Act does not simply grant the Commission administrative and adjudicative functions, but prosecutorial functions as well. Subsection (a) of 15 U. S. C. § 717s reads as follows:

> "Whenever it shall appear to the Commission that any *person* is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule, regulation, or order thereunder, it may in its discretion bring an action in the proper district court of the United States, . . . to enjoin such acts or practices and to enforce compliance with this chapter or any rule, regulation, or order thereunder, and upon a proper showing a permanent or temporary injunction or decree or restraining order shall be granted without bond." (Emphasis added.)

It is clear from this section that the Commission is granted ample authority to proceed against any *person* engaging in practices which violate the Natural Gas Act. It would seem equally clear that if the Commission deemed companies subject to its jurisdiction to be engaging in such practices under claim of authority from the Oklahoma Commission those companies could be forced to defend their conduct in District Court under the provisions of § 717s. But it is a long leap from this provision, which finds a counterpart in other regulatory acts, to the conclusion reached by the District Court here: that the State Commission itself was a "person" for pur-

---

[10] *Id.,* § 717n (a).
[11] *Id.,* § 717r (b).

poses of § 717s, and might be named a defendant in the District Court for purposes of enjoining enforcement of its orders claimed to violate provisions of the Natural Gas Act. I find no support in the Act for that result.

## II

The term "person" is defined in the Act itself, 15 U. S. C. § 717a, as follows:

" 'Person' includes an individual or a corporation."

Since one would not commonly expect a state corporation commission to be subsumed under the term "individual," it seems reasonable to look at the definition of the word "corporation" to determine whether a state agency is within the class of "persons" which the Federal Power Commission has authority to bring into federal court. But the term "corporation" is defined in 15 U. S. C. § 717a (2) to specifically exclude "municipalities as hereinafter defined." Turning to subsection 3, which defines "municipality," one finds that the term means "a city, county, or other political subdivision or agency of a State." Whatever else this chain of definitions may mean, it must mean that a state agency is *not* included within the definition of the term "corporation."

The District Court in this case conceded that the Oklahoma Corporation Commission was neither an individual nor a corporation within the meaning of the Act, but nevertheless concluded that it was a "person" who could be sued by the Federal Power Commission under § 717s. According to the District Court, the verb "includes" as used in the definition of the word "person" is a verb of "enlargement" and not a verb of "limitation." [12] Therefore, the court reasoned: "Whether the defendant Oklahoma Corporation Commission is a non-

---

[12] 362 F. Supp. 522, 544.

individual 'person' against which the [Federal Power Commission] may proceed, is to be determined by the 'legislative environment.' " [13]

I do not think the convoluted statutory construction of the District Court withstands analysis. The Federal Power Commission is given statutory authority to sue any "person," defined in the Act to include an "individual" or a "corporation." While use of the word "include" would in some circumstances permit suits against "persons" who could not fairly be classified as either "individuals" or "corporations," the term hardly can be said to cover an agency with corporate characteristics which is nevertheless specifically excluded from the definition of "corporation." Yet this is exactly the result reached by the District Court here: Though the statute excludes "municipalities as hereinafter defined" from the term "corporation," and defines them to mean, *inter alia,* an "agency of a state," the careful process of exclusion and inclusion pursued by Congress is rendered nugatory by the District Court's conclusion that the Oklahoma Commission is a "non-individual 'person.' " [14]

---

[13] *Ibid.*

[14] Additional arguments to support the conclusion that state regulatory agencies were not intended to fall within the definition of "person" in the Natural Gas Act can be found by examination of that term's use in other portions of the Act. For example, the very section in which the definition of "person" is found, 15 U. S. C. § 717a, contains an additional definition of "state commission." Furthermore, in the same section, "natural-gas company" is defined to mean a *"person* engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." (Emphasis added.) Obviously, inclusion of a state regulatory body within the definition of "person" in that section would be meaningless.

Section 717r provides that "[a]ny person, State, municipality, or State commission aggrieved by an order issued by the Commission" may apply to the Commission for a rehearing. If the term "person"

The "legislative environment" to which the District Court purported to look in reaching its conclusion not only fails to support the court's interpretation but points in precisely the opposite direction.[15]   As indicated earlier in this opinion, the Act was passed in an atmosphere of cooperation between the existing state regulatory agencies and the newly created federal regulatory agency, and was unanimously endorsed by the state regulatory agencies.   There is nothing in this environment, and nothing indicated by the District Court, which suggests that the state agencies, by their approval, were consenting to be sued by the FPC in federal courts.

The cases cited by the District Court for its holding with respect to the "legislative environment" of the Natural Gas Act arose out of statutes taxing sales of intoxicating liquors and prohibiting conspiracies and restraint of trade, respectively.   In *Ohio* v. *Helvering,* 292 U. S. 360 (1934), the Court held that, under a statute taxing "persons" selling intoxicating liquor, federal tax policy would support a tax on the State acting in a "proprietary" capacity.   In *Georgia* v. *Evans,* 316 U. S. 159 (1942), the Court held that a State was included in the definition of "person" for purposes of suing for treble damages under § 7 of the Sherman Act.   These cases

included state regulatory bodies as a matter of course, the duplicate use of "person" and "municipality" or "State commission" would be purely superfluous.   Also, 15 U. S. C. § 717t provides that "[a]ny person" who willfully or knowingly violates the provisions of the Natural Gas Act shall be subject to fine or imprisonment.   Certainly the word "person" in this subsection would not be held to apply to state regulatory bodies.

[15] Although the District Court stated that the "legislative environment" would be persuasive, it should be noted that the court made no study of the environment of the Natural Gas Act.   The only environment examined related to the two acts discussed in the text, *infra.*

are scarcely authority for the proposition that the term "person" in one congressional enactment necessarily means the same thing in another. Neither the Liquor Taxing Act of 1934, § 10 (e), 48 Stat. 315, nor the Sherman Act, § 8, 26 Stat. 210, 15 U. S. C. § 7, defined "person" to include a term such as "corporation" which was then additionally defined to *exclude* the entity sought to be brought within the statute's definition.

My reading of the Natural Gas Act and attendant legislative history affords no basis for the belief that the Federal Power Commission was authorized to bring state commissions into federal court whenever it suspected that state regulatory orders interfered with its own statutory mission. The Federal Power Commission is given full authority to establish rates, to disapprove rates which are considered unreasonable or unjust, and to bring before it alleged violators of the Act. To go further, at least on arguments as tenuous as those offered in support of the result reached by the District Court, and to conclude that Congress intended the Commission to hale state regulatory agencies into federal court whenever it felt their policies were inconsistent with its own, is not only unnecessary to the effectuation of the federal agency's responsibilities, but seriously undermines established notions of comity between state and federal bodies. While there may be many questions of statutory construction which are resolved by three-judge courts which are of no great import to any large segment of the public, this assuredly is not one of them.