574 F.2d 128
 In the Matter of the Accounting of Abraham D. LEVY, as
Administrator of the Estate of Charles Brown a/k/a
Charles W. Brown, Deceased.
STATE OF NEW YORK, Respondent-Appellant,
v.
UNITED STATES of America, Petitioner-Appellee.
 No. 464, Docket 77-6150.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 27, 1978.
Decided April 10, 1978.
 
 Allan E. Kirstein, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., Irwin M. Strum, Asst. Atty. Gen. in Charge of Trusts and Estates Bureau, New York City, and Irving Atkins, New York State Tax Com'n, Sr. Atty., Albany, on the brief), for respondent-appellant.
 William J. Hibsher, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., and Patrick H. Barth, Asst. U. S. Atty., New York City, on the brief), for petitioner-appellee.
 Before LUMBARD and MULLIGAN, Circuit Judges, and BRYAN, District Judge.*
 LUMBARD, Circuit Judge:
 
 
 1
 This appeal confronts us with the question whether a veteran's estate which escheats to the United States under 38 U.S.C. § 5220(a) is subject to New York estate taxation. New York appeals from a judgment in the Southern District, Cannella, J., that such property cannot constitutionally be taxed by the state. We affirm this ruling because we find that the federal statute precludes state taxation of property passing to the United States under § 5220.
 
 
 2
 According to the facts stipulated to by the parties, Charles W. Brown, a physical education teacher retired from the New York City schools, served in the United States Navy from October 3, 1918, to January 12, 1919. On October 11, 1972, Brown entered the Veteran's Administration Hospital in the Bronx for treatment of a heart ailment. At the time of his admission, Brown completed an Application for Medical Benefits which included a notice, set forth in the margin,[1] that under 38 U.S.C. § 5220 Brown's estate would become the property of the United States if, while receiving care from the Veteran's Administration, he were to die intestate with no next of kin or heir to inherit his estate. Brown was discharged from the VA Hospital on November 17, 1972, but was readmitted on March 1, 1973, for further treatment of his heart condition. Shortly thereafter, on March 5, 1973, Brown died of an acute myocardial infarction at the age of seventy-five. Brown had never married, left no next of kin entitled to inherit under New York law,[2] and died intestate. Thus, upon Brown's death, as much of his estate as had not been appointed to another person passed to the United States under 38 U.S.C. § 5220.
 
 
 3
 Abraham Levy, Bronx County Public Administrator, was appointed administrator of Brown's estate on March 16, 1973. In April of 1974 Levy filed with the Surrogate's Court of Bronx County an accounting showing that Brown's entire estate, including four bank accounts held jointly with Gertrude Farrington, a friend of Brown's, was worth $68,690.00 after deductions had been made for funeral and administration expenses. Levy's accounting recognized that the $7,066.76 of the estate not held jointly with Farrington was subject to 38 U.S.C. § 5220(a), which provides that the property of any veteran who dies intestate and without next of kin while a patient in a VA hospital, vests in the United States immediately upon the veteran's death. The administrator's accounting also showed that he had paid out of Brown's estate federal and state estate taxes on the entire $68,690.00.[3]
 
 
 4
 On April 26, 1974, the United States Attorney for the Southern District was cited by the Surrogate Court to show cause why Levy's account of Brown's estate should not be judicially settled and allowed. In response the United States filed an objection in the Surrogate's Court to the payment of estate taxes on that portion of Brown's estate that passed to the United States under 38 U.S.C. § 5220(a). Following this, on May 22, 1974, the United States removed the proceedings from the Surrogate's Court to the District Court for the Southern District of New York under 28 U.S.C. § 1441, asking that the federal court determine whether under federal law New York could tax property which, upon the death of the decedent, immediately vested in the United States under 38 U.S.C. § 5220.
 
 
 5
 On April 27, 1976, the parties stipulated the facts and thereafter each side moved for summary judgment. On July 20, 1977, the District Court issued its written opinion, finding that it had jurisdiction to decide the case, and that it should not abstain from doing so. On the merits, Judge Cannella ruled that Brown's property became property of the United States immediately upon his death and, therefore, that New York could not constitutionally tax the estate under McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819). It is from this judgment that New York appeals.
 
 
 6
 Appellant's argument that this section is barred from the federal courts by the Tax Injunction Act of 1937, 28 U.S.C. § 1341, is devoid of merit. The Tax Injunction Act, which forbids an injunction by federal courts against the "assessment, levy or collection of any tax under State law . . . (provided) . . . a plain, speedy and efficient remedy" may be had in state court, does not preclude actions by the United States when suing "to protect itself and its instrumentalities from unconstitutional state exactions." See Department of Employment v. United States, 385 U.S. 355, 358, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966).[4]
 
 
 7
 Furthermore, we find this case singularly inappropriate for the invocation of the equitable doctrine of abstention. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 813-17, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Here there is no unsettled question of state law whose resolution could materially alter the nature of the federal claims in issue. In In re Estate of O'Brine, 37 N.Y.2d 81, 371 N.Y.S.2d 453, 332 N.E.2d 326 (1975), the New York Court of Appeals emphatically held that property passing to the United States under 38 U.S.C. § 3202(e) (which is substantially the same as 38 U.S.C. § 5220) is subject to New York taxation.[5] The entertaining of federal jurisdiction in this case does not interfere with state proceedings or functions; the state tax here was paid more than three years ago and, after deciding the issue of federal law, the district court remanded to the Surrogate's Court for completion of probate proceedings. Moreover, the most important issues in the case the constitutionality of the New York statute and the effect of 38 U.S.C. § 5220 are matters of federal rather than state law. Accordingly, the district court properly refused to abstain.
 
 
 8
 Congress, by enacting 38 U.S.C. § 5220(a), preempted state estate tax provisions insofar as they would apply to veteran's property escheating to the United States. By its terms, § 5220 provides that "all . . . property, including money and choses in action, owned by (the deceased veteran who dies intestate and without next of kin) . . . shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund" (emphasis supplied). Congress included no exception whatsoever for state estate taxes to be paid from such property. Indeed, in § 5220(b) Congress underscored the importance of this scheme by conditioning the receipt of care in a VA hospital on § 5220(a). Thus, the plain wording of § 5220 evinces Congress' intention to preclude any state estate taxation of veterans' estates passing to the United States.
 
 
 9
 Congress' purpose in passing § 5220 was to supply greatly needed funds for the General Post Fund, which provides recreation and other forms of enjoyment to ex-service men and women confined to veterans' homes and hospitals. See United States v. Oregon, 366 U.S. 643, 647, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961). Although the scant legislative history of § 5220 does not explicitly address the question of estate taxes, discussion on the floor of the House when the bill was being considered demonstrated Congress' intention to benefit veterans by taking from the state what would otherwise be its by escheat. See 87 Cong.Rec. 5203 (1941). Cf. United States v. Board of Commissioners of Public Schools of Baltimore City, 432 F.Supp. 629, 632 (D.Md.1977). It would undermine Congress' purpose in enacting § 5220 were the statute construed to permit states to tax away from the Post Fund substantial portions of the estates given it by § 5220. In light of the statute's express wording and the purpose of the statute, we hold that § 5220 precludes state taxation of property passing to the United States under § 5220.[6]
 
 
 10
 Affirmed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 "NOTE The law (38 U.S.C. 5220 et seq.) provides that upon the death of any veteran receiving care or treatment by the Veteran's Administration in any institution leaving no widow (widower), next of kin or heir entitled to inherit, all personal property, including money or balances in bank, and all claims and choses in action, owned by such veteran, and not disposed of by will or otherwise, will become the property of the United States as trustee for the Post Fund."
 
 
 [2]
 New York law governs the disposal of Brown's estate as the law of his state of domicile
 
 
 [3]
 $408.30 in federal taxes and $1,459.38 in state taxes was paid. Of this $1,459.38, approximately $85 represents state taxation of the $7,066.76 which vested in the United States upon Brown's death
 Since the time of Levy's accounting, the Internal Revenue Service (IRS) has made plain in a letter to counsel for the government its view that no federal state tax is properly levied on property passing to the United States under 38 U.S.C. § 5220(a). The IRS, although of the view that such property is properly includible within the decedent's gross estate, states that the property's value is deductible under IRC § 2053 as a pledge which would have been deductible if made as a bequest. See Treas.Reg. § 20.2053-5. Accordingly, the federal estate tax on that portion of Brown's estate which passed to the United States apparently is no longer in issue.
 
 
 [4]
 United States v. City of New York, 175 F.2d 75, 2d Cir., cert. denied 338 U.S. 885, 70 S.Ct. 189, 94 L.Ed. 543 (1949) is not inconsistent with this principle, since the result in that case was based upon the abstention doctrine rather than on the Tax Injunction Act
 Moreover, there is substantial question whether the Tax Injunction Act applies to declaratory judgment actions, irrespective of the parties. See P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 978-79 (2d Ed. 1973).
 
 
 [5]
 Beyond ruling that New York state law imposes an estate tax on property passing under 38 U.S.C. § 3202(e), the New York Court of Appeals held in O'Brine, over a vigorous dissent, that Congress did not preempt such state taxation in passing § 3202(e), although it could have done so if it had wished
 
 
 [6]
 Plainly Congress has the power under the Constitution, art. I, sec. 8, to achieve this result. See United States v. Oregon, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961). We reject New York's suggestion that the Supreme Court by its decision in National League of Cities v. Usery, 426 U.S. 533, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), implicitly overruled Oregon. National League of Cities explicitly dealt only with federal interference with "integral governmental functions" and, as such, reflects concern for Congressional involvement in the day-to-day affairs of the states. § 5220 in no way bears upon such integral functions, as it affects only the states' powers of escheat
 Since we find that § 5220 precludes imposition of New York estate taxes upon veterans' estates which escheat to the United States, we find it unnecessary to address the only issue of state law in this case: whether New York law provides for such taxation.