**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,**

v.

**STATE OF NEW YORK and City of New York, Defendants.**

No. 88 Civ. 1864 (JES).

United States District Court, S.D. New York.

July 31, 1989.

Thacher Proffitt & Wood, New York City, for plaintiff; Joel B. Harris, David G. Greene, John F. Finetti, of counsel.

Robert Abrams, Atty. Gen. State of N.Y., New York City, for defendant, State of N.Y.; Frederic L. Lieberman, Rosalie J. Hronsky, Asst. Attys. Gen., of counsel.

Peter L. Zimroth, Corp. Counsel of City of New York, New York City, for defendant, City of New York; Gale Zareko, Stanley Buchsbaum, Asst. Corp. Counsel, of counsel.

Hughes, Hubbard & Reed, New York City, for amici curiae; David R. Tillinghast, Merrikay S. Hall, Mary Anne Mayo, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

The Federal Deposit Insurance Corporation ("FDIC") brings this action for declaratory and injunctive relief pursuant to 28 U.S.C. § 1345 (1982) against the State of New York ("State") and the City of New York ("City").[1] The FDIC has moved for summary judgment and the State and City have cross-moved for judgment on the pleadings or in the alternative for summary judgment. For the reasons that follow, the defendants' motion for judgment on the pleadings is granted and the FDIC's motion is denied.

## BACKGROUND

In the early 1980s, it became apparent that many savings banks were facing severe losses brought about by the volatile interest rates of the previous decade. *See* S.Rep. No. 536, 97th Cong., 2d Sess. 4,

reprinted in 1982 U.S.Code Cong. & Admin.News at 3055–59. These losses resulted from the increasingly large disparity between the relatively low returns on long term fixed rate mortgages and mortgage backed securities, and the costs associated with paying higher and higher interest rates and dividends in order to retain depositors in an increasingly competitive and deregulated market. *Id.* The losses generated by this phenomenon, in turn, drastically reduced the net worth of the financial institutions affected, thereby creating a very real risk of insolvency and heightening the possibility that a massive financial burden would eventually be thrust upon the nation's banking insurance agencies, of which plaintiff is one. *Id.*

Congress responded to this crisis in the savings bank industry by passing the Garn Act in the fall of 1982. One provision of that Act, 12 U.S.C. § 1823(i)[2], sought to bolster the net worth of ailing savings banks by allowing a qualifying bank[3] to sell an instrument called a net worth certificate ("NWC") to the FDIC. In return, the FDIC issues a promissory note corresponding to the value of the NWC and paying an interest rate equal to the rate of dividend payment on the NWC. *See* 12 U.S.C. § 1823(i)(1)(B). The promissory note then becomes part of the bank's capital account, bolstering its net worth without actually taking any funds out of the United States Treasury. In short, the note is a paper asset guaranteed by the FDIC.

In addition to receiving the promissory note, a bank participating in the program becomes, by the terms of the Act, exempt from state and local taxes levied upon their deposits or the interest or dividends paid on

---

1. In addition, the FDIC seeks a refund of taxes paid by the Bowery Savings Bank to the City of New York. *See infra,* pp. 193–94.

2. 12 U.S.C. § 1823(i)(1)(A) states that:
   Notwithstanding any other provision of State or Federal law, and without limitation on any authority provided elsewhere in this Chapter, the Corporation, [FDIC] in its sole discretion and on such terms and conditions as it may prescribe, is authorized to increase or main-

tain the capital of a qualified institution by making periodic purchases of capital instruments to be known as net worth certificates, as defined by the Corporation, for such form of consideration as the Corporation may determine, from such institution, and may authorize such institution to issue net worth certificates, pursuant to this subsection.

3. A bank qualifies to participate in this program by showing itself to be in sufficiently dire financial straits. *See* 12 U.S.C. § 1823(i)(2).

those deposits.[4] In December of 1982 the Bowery Savings Bank ("Bowery") issued $58,700,000 worth of the above-described net worth certificates.[5]

Nevertheless, the State and the City of New York taxed the interest paid on the Bowery's deposits during the calendar year 1982,[6] and the City continues to hold approximately 1.7 million dollars of those taxes which the FDIC seeks to recover on the basis of an assignment taken from the Bowery.[7] In addition, the City and the State taxed several other banks that had issued NWCs from January 1982 to December 1984. *See* Affidavit of David R. Tillinghast, Memorandum of Law of Amici Curiae, Ex. A at ¶¶ 17–18.

The State received petitions claiming an exemption from the State tax from fifteen of those banks, between September, 1986 and May, 1988. *See* Affidavit of Mark Volk ("Volk Aff.") at ¶ 3. Hearings on these petitions have been held in abeyance pending the outcome of the instant action. *See id.* at ¶ 10. On March 15, 1983, the Bowery requested a refund of prepaid taxes for 1982, and received that refund in June, 1982. *See* Plaintiff's Statement Pursuant to Rule 3(g) at ¶¶ 13–14. The State plans to reassess the Bowery's 1982 tax, but has not yet done so because the Bowery consented to extend the limitations period for assessment of that tax. *See* Volk Aff., Ex. B.[8]

The Bowery filed a refund claim with the City on March 15, 1983, and requested a hearing on March 1, 1985. *See* Affidavit of Ramon Cintron ("Cintron Aff.") at ¶ 2. That claim has not yet been processed because of delays necessitated by a 1985 New York Court of Appeals decision[9] that required a recalculation of the Bowery's City taxes for the years 1973–81. *See* Affidavit of Maria Jones ("Jones Aff.") at ¶ 3. In addition, in order to conduct a hearing on all issues raised by the refund claim, the City conducted an audit of the Bowery for the 1982 tax year. *See id.* at ¶ 4. That audit was completed on October 18, 1988. *See id.* As a consequence, the City is now prepared to proceed with the hearing.

In March 1988, the FDIC, in its corporate capacity, brought this action seeking a declaratory judgment that the taxes imposed by the City and the State violate the Garn Act's tax exemption provisions and are therefore unconstitutional under the Supremacy Clause of Article VI of the United States Constitution. In addition, the FDIC seeks to enjoin any future tax assessment or collection for taxable years from January 1, 1982 through December 31, 1984

---

**4.** 12 U.S.C. § 1823(i)(9) states that:

During any period when a qualified institution has outstanding net worth certificates issued in accordance with this subsection, such institution shall not be liable for any State or local tax which is determined on the basis of the deposits held by such institution or the interest or dividends paid on such deposits.

**5.** The Bowery's net worth certificates are relevant here only because the FDIC contends it has a right, by virtue of an alleged assignment of a refund claim, to the City taxes paid by the Bowery. *See infra* pp. 196–97.

**6.** Pursuant to N.Y.Tax Law § 1451 and N.Y. City Admin.Code § R–46–37.1, in effect in 1982, the State and the City imposed franchise taxes upon banks doing business in the state and the city respectively. Where a bank such as the Bowery had no net income, the tax was imposed as a percentage of the interest credited to depositors during the taxable year. In 1982, for those banks like the Bowery with a net worth of less

than 5% of deposits, the state tax rate was 1.25% and the city tax rate was 1.82%.

**7.** In August 1985, the FDIC was instrumental in restructuring the assets of the Bowery, transforming it into a new entity. This transaction was memorialized in a document referred to hereinafter as the "Assistance Agreement". In exchange for financial assistance, the FDIC took an assignment of all Bowery's claims arising prior to the transformation, which the FDIC contends includes an assignment of any tax refund claims. *See* Plaintiff's Memorandum of Law at 10.

**8.** The Bowery agreed to the extension as part of the State's efforts to litigate one lead case where petitioners allege common grounds for a refund. *See* Volk Aff. at ¶¶ 6–7. The lead case was not scheduled for hearing due to the commencement of this action. *See id.* at ¶ 10.

**9.** *See The Bowery Savings Bank v. Michael,* 64 N.Y.2d 397, 477 N.E.2d 430, 488 N.Y.S.2d 128 (1985) (holding that Bowery incorrectly computed New York City financial corporation tax).

and, pursuant to an assignment from the Bowery, to recover the taxes paid by the Bowery to the City for 1982.[10]

While there can be little question that the Garn Act bars the imposition of the Franchise tax during any period when NWCs are outstanding, the dispute here concerns how Congress intended the term "period" to be construed. The State and the City maintain that they are entitled to collect taxes for any part of a year until an NWC is issued because "period" only means that time period during which NWCs are actually outstanding. The FDIC contends that no assessment of taxes for 1982 is permissible because period refers to the entire taxable year during which an NWC is issued.[11] The State and the City also contend that a variety of jurisdictional barriers, the Tax Injunction Act, the 11th Amendment, and lack of standing, prevent resolution of the merits of this action.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

#### A. *Tax Injunction Act*

■ Defendants first contend that the FDIC is barred from maintaining this action by 28 U.S.C. § 1341 (1982), the Tax Injunction Act. Section 1341 provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain speedy and efficient remedy may be had in the courts of such State." [12] Thus, had this action been brought by any of the banks subjected to the City and State taxes, there could be no question that the Tax Injunction Act would bar the claim.[13] The FDIC contends, however, that it is a federal instrumentality, and therefore, that it falls within a judicially created exception to the Tax Injunction Act, *i.e.*, the "Tax Injunction Act is inapplicable to suits brought by the United States to protect itself and its instrumentalities from unconstitutional state exactions," *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976); *see Matter of Levy*, 574 F.2d 128 (2d Cir. 1978). The Court rejects that contention.

The policy underlying the federal instrumentalities doctrine is to protect the sovereignty of the United States from the threat that is created by taxing an entity whose interests are identical to those of the federal government. *See Moe, supra*, 425 U.S. at 470, 96 S.Ct. at 1639; *see also Federal Reserve Bank of Boston v. Commissioner of Corps. and Taxation*, 499 F.2d 60 (1st Cir.1974); *Federal Land Bank v. Board of County Comm'rs*, 582 F.Supp. 1507 (D.Colo.1984).

The FDIC, however, as this Court noted in *Lapadula & Villani, Inc. v. United States*, 563 F.Supp. 782 (S.D.N.Y.1983), is not an agency which is an integral part of the governmental mechanism. The FDIC's profits do not inure to the benefit of the United States, and its losses are not generally borne by the United States. Thus, the public treasury will be unaffected by its success or failure in recovering the debts owed to it as a successor in interest to the claims of the bank. Simply put, the FDIC

---

**10.** The FDIC also seeks dismissal of the State's counterclaim for the Bowery's unpaid alternative minimum tax for 1982.

**11.** Alternatively, the FDIC has urged the Court to adopt the interpretation of the Federal Home Loan Bank Board, that "period" means "the period during which that [qualified] institution sustained operating losses that are encompassed in part by the FSLIC's purchase of net worth certificates." *See* 48 Fed.Reg. 8,256, 8,257 (1983).

**12.** The Act has been held to bar declaratory relief as well. *See California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507–08, 73 L.Ed.2d 93 (1982).

**13.** The statute was designed to adopt a pre-existing federal equity practice that held that:

> 'the mere illegality or unconstitutionality of a state ... tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review of any federal question involved....'

*See Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1639–40, 48 L.Ed.2d 96 (1976) (quoting *Great Lakes Co. v. Huffman*, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943)) (citation omitted).

is a separate legal entity serving a proprietary rather than a sovereign function.

Moreover, the FDIC does not receive appropriations from the United States Treasury (although it may borrow from the Treasury at prevailing interest rates), is funded by assessments on insured banks, is paid interest on its investments in the United States Treasury, and is taxed by the United States on such interest. *See* Reply Affidavit of Rosalie J. Hronsky at ¶¶ 2–4. All these factors show that the FDIC is an entity quite separate from the United States.[14]

It follows that the rationale underlying the exception makes it inapplicable where, as here, the federal instrumentality seeking the injunction is not the entity being taxed, and there is no burden upon either the United States or its alleged instrumentality resulting from that tax.[15] Unlike the typical federal instrumentality case where the instrumentality itself has been subjected to state taxation, in this case it is the banks which have been taxed, not the sovereign. Any impact the taxes have upon the FDIC flows from its status as an assignee. However, as an assignee, it cannot have any greater right to enjoin the tax than its assignor the bank would have, and it is clear that the Tax Injunction Act would bar a similar suit by the bank. Under these circumstances, the FDIC cannot avail itself of the federal instrumentality exception,

and the Tax Injunction Act bars plaintiff's claims for injunctive and declaratory relief.[16]

### B. *11th Amendment*

■ The State also contends that the 11th Amendment bars the FDIC's claim for declaratory and injunctive relief against the State.[17] While the 11th Amendment does indeed bar suits by *individuals* for declaratory and injunctive relief against a state, nothing in the 11th Amendment says that a state cannot be sued by the United States. *See United States v. Mississippi,* 380 U.S. 128, 140 (1965) (emphasis added). The FDIC contends that for the purposes of the 11th Amendment it is the United States. This Court disagrees.

The FDIC's reliance on the fact that the Federal Savings and Loan Insurance Corporation ("FSLIC") has been found to be the United States for 11th Amendment purposes is misplaced.[18] The statute pertinent to the FSLIC, unlike the statute relevant to the FDIC, specifically provides that the FSLIC "shall be deemed an agency of the United States." *See* 12 U.S.C. § 1730(k)(1)(A) (1982). Absent such statutory authority this Court is constrained to abide by the Supreme Court's holding in *Smith v. Reeves,* 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900), that federal corporations are barred from bringing suits against a state by the 11th Amendment,[19]

---

**14.** *But see FDIC v. Hartford Ins. Co. of Illinois,* 877 F.2d 590 (7th Cir.1989) (FDIC acting as receiver is the United States for purposes of the Federal Tort Claims Act).

**15.** The FDIC argues that because it has issued promissory notes to back up the Bowery's NWCs, it could, at some future time be required to pay money to the Bowery's creditors. However, any liability the FDIC may have on the notes arises solely from its contractual obligations, and does not result from any State or City tax.

**16.** Of course application of the Tax Injunction Act requires the availability of a speedy and efficient state remedy. Such a procedure is available to the Bowery, has been invoked at the administrative level, and is reviewable in an Article 78 Proceeding in the courts of the State of New York. The City is prepared to proceed with the Bowery's refund claim immediately. *See* Defendants' Rule 3(g) Statement at ¶ 15.

**17.** The 11th Amendment does not, of course, bar a claim against the City. *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**18.** *FSLIC v. Director of Revenue,* 650 F.Supp. 1217 (N.D.Ill.1986); *see also Brennan v. Iowa,* 494 F.2d 100 (8th Cir.1974), *cert. denied,* 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975) (Secretary of Labor's exercise of express statutory authority to enforce FLSA is suit by United States).

**19.** In *Smith v. Reeves,* the Receiver of the Atlantic and Pacific Railroad Company, a corporation created by Congress to build and maintain railroad and telegraph lines, sued the Treasurer of the State of California to recover taxes previously assessed and paid. *See* 178 U.S. at 436–37, 20 S.Ct. at 919. In evaluating the State's Eleventh Amendment argument, the Supreme Court held that the Eleventh Amendment bars suits

*cf. Starr v. Schram,* 143 F.2d 561 (6th Cir.1944); *Lapdula, supra,* 563 F.Supp. at 784, and must conclude that it is without jurisdiction over plaintiff's claims against the State.

### C. *Standing*

Defendants also argue that the FDIC lacks standing to pursue this cause of action because it has neither statutory authority to enforce the Garn Act nor a requisite stake in the outcome of the litigation sufficient to confer standing under Article III. This Court agrees.

■ Plaintiff's argument that 12 U.S.C. § 1819 confers power upon the FDIC to enforce the Garn Act lacks merit.[20] That section does nothing more than give the FDIC power to exercise all other powers specifically granted to it by other statutory provisions, and those incidental powers necessary to carry out a previously granted power. Clearly the power to sue to enforce the Garn Act's tax exemption has not been granted to the FDIC by any other statutory provision, and the FDIC has not even cited to the Court any such granted power to which the enforcement power might be incidental.[21]

■ Nor does the FDIC have a sufficient stake in the outcome of this litigation. *See Valley Forge Christian College v. Ameri-*

cans *United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982). The FDIC's argument that it has the requisite personal stake because it holds an assignment of the Bowery's claim to a refund pursuant to the Assistance Agreement is not even supported by the language of that agreement, which does not contemplate the assignment of tax refund claims. *See* Plaintiff's Rule 3(g) Statement, Ex. H. Indeed, the clause of the agreement upon which plaintiff relies is directed only at claims arising out of any loss caused by a third party. A tax assessment cannot rationally be construed as a loss caused by the City.[22]

Moreover, the assignment of refund claims is prohibited under the City's administrative code, which provides that refund claims may only be prosecuted by the taxpayer. *See* N.Y. City Admin.Code §§ 11–678(1) (refund claims "shall be filed by the taxpayer"), 11–680(3) ("taxpayer may file a petition" for refund), 11–681(1) (judicial review of refund decision may be sought by "any taxpayer affected thereby"). Even after a refund is declared due it may only be assigned to another corporation liable for City corporation tax. *See* N.Y. City Admin.Code § 11–677(5). In any event, since the Bowery has already received a refund of its state tax, there can be no valid refund claim against the State which

---

"brought by Federal Corporations against a State without its consent." *Id.* at 436, 20 S.Ct. at 919.

**20.** 12 U.S.C. § 1819 (1982) states in relevant part that:
... the Corporation shall become a body corporate and as such shall have power ...
Seventh. To exercise ... all powers specifically granted by the provisions of this chapter, and such incidental powers as shall be necessary to carry out the powers so granted.

**21.** The cases relied upon by the FDIC are legally and factually inapposite. *See Federal Power Commission v. Corporation Commissioner of Oklahoma,* 362 F.Supp. 522 (W.D.Okla.1973), *aff'd,* 415 U.S. 961, 94 S.Ct. 1548, 39 L.Ed.2d 863 (1974); *NLRB v. Nash–Finch, Co.,* 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971). In both of those cases, the jurisdiction of a federal agency was impacted by state regulation. Indeed, in *Nash–Finch,* the Supreme Court was faced with a situation in which a state proceeding inter-

fered with the preemptive jurisdiction of the NLRB. Those cases are not relevant where, as here, a federal corporation is at best asserting the interests of a private corporation, under a statute designed to benefit those private corporations, and where it has not been granted any jurisdiction to enforce those rights.

**22.** Paragraph 13.2 of the Assistance Agreement between the Bank and the FDIC, *see* note 7, *supra,* states that:
Bowery Bank and Resulting Bank hereby assign ... to the FDIC any or all claims ... [which they] may have, against (i) any present or former officer ... and (ii) any underwriter of blanket Bonds of Bowery Bank ... or any other insurance policy of Bowery Bank, ... and (iii) any others whose action or inaction may be related to any loss incurred by Bowery Bank....
*See* Plaintiff's Rule 3(g) Statement, Ex. H.

can be enforced by the FDIC as assignee.[23]

## CONCLUSION

Plaintiff's claims for injunctive and declaratory relief are barred by the Tax Injunction Act. In addition, the 11th Amendment bars plaintiff's claim for relief against the State, and, in any event, plaintiff lacks standing to bring this action. It follows that this Court lacks subject matter jurisdiction and that plaintiff's complaint and defendant's counterclaim must be dismissed. The clerk is directed to dismiss plaintiff's complaint and the State's counterclaim, and close the above-captioned action.

It is SO ORDERED.

---

**23.** The FDIC argues that because the Bowery and the FDIC later determined that pursuant to Article Twelve of the Assistance Agreement, the FDIC was to indemnify the Bowery for any taxes paid, and that in return the FDIC was to be entitled to any money refunded by the City, the FDIC is now entitled to sue upon the refund claim here. *See* Plaintiff's Rule 3(g) Statement at ¶¶ 10–11. This argument is unpersuasive. The right to receive any refund proceeds the Bowery may receive is irrelevant to the question of whether the FDIC has the right to pursue the refund claim itself.

Moreover, even if the Bowery were pursuing the refund claim, it would be required to exhaust its administrative remedies and to proceed only in state court. *See* N.Y. City Admin.Code § 11–681(2). It follows that the FDIC as an assignee can have no greater right than its assignor, and therefore cannot sue directly for the refund in federal court without exhausting those state administrative and judicial remedies.