Belfand v Petosa (2021 NY Slip Op 03522)





Belfand v Petosa


2021 NY Slip Op 03522


Decided on June 03, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 03, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern,J.P.,
Jeffrey K. Oing
Anil C. Singh
Peter H. Moulton JJ.


Index No. 155496/12 Appeal No. 13251 Case No. 2020-00715 

[*1]Seman Belfand, Plaintiff-Respondent,
v
Raymond Petosa, et al., Defendants-Appellants.



Defendants appeal the order of the Supreme Court, New York County (Robert R. Reed, J.), entered on or about January 17, 2020, which denied their motion to dismiss the action.




McGivney, Kluger, Clark & Intoccia, P.C., New York (Dean L. Pillarella and Michael Rawlinson of counsel), for appellants.
William Schwitzer & Associates, P.C., New York (Howard R. Cohen of counsel), for respondent.



OING, J


This appeal asks us to address an issue of constitutional magnitude — whether the United States Supreme Court's recent decision in Franchise Tax Bd. of California v Hyatt (__ US __, 139 S Ct 1485 [2019]) (Hyatt) requires us to dismiss, based on the doctrine of sovereign immunity, a trial-ready action in which an entity of a sister state is the named defendant. We hold that defendant New Jersey Transit Corporation (New Jersey Transit) waived its sovereign immunity, and therefore affirm the trial court's denial of its motion to dismiss the complaint.
Plaintiff, Seman Belfand, commenced this action in August 2012 to recover damages for personal injuries he allegedly sustained as a result of a March 8, 2012 motor vehicle accident in which a commuter bus owned by New Jersey Transit and operated by a New Jersey Transit employee, defendant Raymond Petosa (Petosa), rear-ended his vehicle on 12 Avenue and West 24 Street in Manhattan. Plaintiff asserted a single cause of action for negligence alleging that Petosa, acting within the scope of his employment with New Jersey Transit, negligently operated the bus he was driving and struck plaintiff's vehicle.
On May 22, 2013, plaintiff moved for summary judgment. New Jersey Transit opposed by proffering the affidavit of defendant Petosa, which challenged plaintiff's version of the accident. Specifically, contrary to plaintiff's assertions that he was stopped at a red traffic signal when rear-ended by the bus Petosa was operating, Petosa claimed that plaintiff cut in front of his bus and stopped short, leaving no chance for him to avoid colliding with plaintiff's vehicle. The motion court denied the motion finding that factual issues were present. Pre-trial proceedings continued.
On May 17, 2016, due to plaintiff's lack of cooperation with discovery, New Jersey Transit moved by order to show cause for a conditional order of preclusion,[FN1] which it subsequently withdrew. Prior to trial, New Jersey Transit conceded Petosa's negligence, and its own vicarious liability, leaving damages as the sole remaining issue for trial. Plaintiff prevailed at the damages trial. During the damages trial, however, plaintiff introduced medical evidence concerning injuries that he had not pleaded in his bill of particulars. The trial court granted New Jersey Transit's motion for a mistrial. By orders to show cause dated January 6, 2017 and February 22, 2017, New Jersey Transit sought to strike plaintiff's fourth and fifth supplemental bill of particulars so as to preclude plaintiff from introducing any evidence concerning his newly pleaded injuries at the second trial. The motion court decided the motions on June 8, 2017 and adjourned the matter for trial on the issue of damages.
During jury selection for the second trial, New Jersey Transit raised the issue of sovereign immunity and subject matter jurisdiction for the first time, in light of the Supreme Court's decision in Hyatt, decided six months earlier, which held that the US [*2]Constitution did not permit a state to be sued by a private party in a sister state court without its consent. As discussed at greater length below, Hyatt altered sovereign immunity jurisprudence with respect to a state's exposure to suit in another state's courts. At the trial court's direction, New Jersey Transit moved to dismiss this action on the ground that it is barred by the doctrine of sovereign immunity, which deprived the court of subject matter jurisdiction. It argued that it is entitled to sovereign immunity as an arm of the State of New Jersey, that this immunity bars suits against it in a sister state without its consent, and that it did not consent to suit in New York.[FN2] New Jersey Transit pointed out that these legal principles are reflected in the Eleventh Amendment of the US Constitution, which reaffirm the notion that the states, while united, maintain certain attributes of sovereignty, including sovereign immunity. It further argued that raising the doctrine of sovereign immunity at the second trial is of no moment because the change in the law concerning this doctrine was recent. In any event, notwithstanding the delay, New Jersey Transit contended that sovereign immunity can be raised at any time because it divests the court of subject matter jurisdiction.
Plaintiff argued that New Jersey Transit was not entitled to sovereign immunity. Although under sovereign immunity, a state or state entity that is immune from suit in its own state courts is also immune from suit in sister state courts, plaintiff argued that was not the case for New Jersey Transit. He pointed to the New Jersey Tort Claims Act, NJ Stat Ann 59:1-1, et seq., which established a mechanism for bringing suits against the state and its public entities in New Jersey state court. Given that New Jersey has consented to suits concerning certain claims within its state borders under the statute, New Jersey and its entities, such as New Jersey Transit, can be sued in sister states for the same claims. According to plaintiff, Hyatt did not alter this constitutional framework. As to defendants' Eleventh Amendment argument, plaintiff pointed out that this constitutional immunity precludes a state from being sued by citizens of another state in federal court, and not, as here, in state court.
The trial court denied the motion, agreeing with plaintiff's argument premised on the New Jersey Tort Claims Act. The court opined that to permit a New Jersey Transit bus to operate in New York and not be held responsible for its negligence in a New York court under the guise of sovereign immunity would be "ludicrous." This Court granted New Jersey Transit a stay of the second trial pending this appeal.
Our resolution of the sovereign immunity issue requires a brief review of the genesis of that doctrine and the enactment of the Eleventh Amendment to the US Constitution, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law [*3]or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "The immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries. Only the sovereign's own consent could qualify the absolute character of that immunity" (Nevada v Hall, 440 US 410, 414 [1979]). The doctrine of sovereign immunity is a combination of two very different concepts: one involving suits in the sovereign's own courts and the other involving suits in the courts of another sovereign (id.). The Framers of the US Constitution recognized that the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Article III, and believed the principle to be self-evident, unless altered by the constitution or certain constitutional amendments (see Hyatt, 139 S Ct at 1494-1496).
This recognition was tested early in our nation's history. In 1793, the Supreme Court assumed original jurisdiction over a matter commenced by a South Carolina citizen against the State of Georgia (see Chisholm v Georgia, 2 US 419 [1793]). In the immediate aftermath of Chisholm, the Eleventh Amendment was swiftly enacted. The amendment's clear purpose was to reaffirm the fundamental principle that sovereign immunity limits the grant of judicial authority set forth in Article III of the US Constitution.
"That a state may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given, not one brought by citizens of another state, or by citizens or subjects of a foreign state, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the amendment is but an exemplification" (Ex parte State of New York, 256 US 490, 497 [1921]). Because of the significant constitutional underpinnings, a state's consent to suit in federal courts must be expressed unequivocally (see Edelman v Jordan, 415 US 651, 673 [1974]). Although Eleventh Amendment jurisprudence concerned limiting the jurisdiction of federal courts, the Supreme Court in Hall (440 US 410) had the opportunity to consider the scope of sovereign immunity enjoyed by a state sued in another state's courts.
Hall involved an automobile collision on a California highway in which California residents sustained injuries when their vehicle collided with a vehicle driven by a University of Nevada employee, who was engaged in official business for the university at the time of the accident. The California residents commenced an action in California state court against the administrator [*4]of the driver's estate, the University of Nevada, and the State of Nevada. The parties conceded that the driver was operating a vehicle owned by the State of Nevada while engaged in official business and that the university was an instrumentality of the State of Nevada.
In response to Nevada's motion to quash service upon it, the California Supreme Court held that as a matter of California law the California plaintiffs could sue the State of Nevada in California court. The matter reached the Supreme Court on the issue of whether a state may invoke sovereign immunity to prevent it from being sued in a sister state court, and, if immunity did not bar the suit, whether the forum's state or the sister state's laws governing liability should apply. Noting that the Eleventh Amendment addressed limits on a federal court's jurisdiction, the Court's majority noted the absence of any similar constitutional limitation on the exercise of a state's power to authorize its courts to assert jurisdiction over another state, and observed that the US Constitution does not explicitly or implicitly require that a sister state grant another state immunity from suit in its courts (id. at 416-421). In deciding whether to grant a state immunity, and which law governing liability should apply, the Court's majority held that the forum state must be guided by principles of comity in the resolution of these issues (id. at 425-427). The reasoning is based on the idea that the states maintained sovereign immunity vis-À-vis each other in the same way that foreign nations do, meaning that immunity is available only if the forum state voluntarily decides "to respect the dignity of the [defendant State] as a matter of comity" (id. at 416). The Court concluded that if it were to hold that California could not sue Nevada in California state court that would "constitute the real intrusion on the sovereignty of the States" (id. at 426-427). Thus, under Hall, the decision whether to grant sovereign immunity rested with the forum state. Forty years later, in Hyatt, the Supreme Court dramatically altered that constitutional principle.
The Hyatt case involved a citizen of Nevada suing the Franchise Tax Board of California (Board) in Nevada state court claiming that the Board committed various torts against him while it conducted tax audits primarily in Nevada.[FN3] The Supreme Court granted certiorari in order to revisit the issue decided in Hall, namely, "whether the Constitution permits a State to be sued by a private party without its consent in the courts of a different State" (Hyatt, 139 S Ct at 1490).[FN4] The Court held that the US Constitution does not permit a nonconsenting state to be sued in another state's court, and expressly overruled Hall. The Court's majority challenged the Hall majority's finding that interstate sovereign immunity is an issue of comity, and, instead, found that under the US Constitution "States retain their sovereign immunity from private suits brought in the courts [*5]of other States" (id. at 1492). The Court observed that "[t]he Constitution does not merely allow States to afford each other immunity as a matter of comity; it embeds interstate sovereign immunity within the constitutional design" (id. at 1497); it "fundamentally adjusts the States' relationship with each other and curtails their ability, as sovereigns, to decline to recognize each other's immunity" (id. at 1492). Thus, the Court held that a state cannot be subjected to private suits in a sister state court unless it consents to such suits (id. at 1493). The Hyatt Court dramatically altered sovereign immunity analysis: the decision as to whether sovereign immunity should be honored was moved from the forum state, guided by principles of comity, to the sister state, vesting it with sole discretion as to whether to consent to the forum state's jurisdiction. With this constitutional framework in place, we address New Jersey Transit's argument that it is entitled to assert sovereign immunity, which divests our courts of subject matter jurisdiction over this action and requires dismissal of the action. Hyatt holds that a state may be sued by a private citizen in a sister state only when it has consented to such suits. New Jersey Transit did not expressly consent to being sued in this New York action and argues that the trial court erred in relying on the New Jersey Tort Claims Act to find consent, pointing out that the statute lacks any unequivocal expression of consent to the state being sued in a sister state court. We agree. The US Constitution bars suits against nonconsenting states based on a mere inference of consent (see e.g. Florida Dept of Health & Rehabilitative Servs. v Florida Nursing Home Assn, 450 US 147 [1981] [state law providing state entity with capacity to "sue and be sued" does not amount to express consent to be sued in another state]; Kennecott Copper Corp. v State Tax Commn, 327 US 573 [1946] [allowing suits "in any court of competent jurisdiction" is not consent]; Smith v Reeves, 178 US 436 [1900] [consent not expressed where intent is to be sued in a state's own courts]). The constitutional principle is clear — consent to suit in a sister state by legislation will exist "only where stated by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction" (Edelman Jordan, 415 US at 673 [internal quotation marks omitted]).
The New Jersey Tort Claims Act unambiguously subjects New Jersey to suits in its own courts.[FN5] The statute is "dispositive . . . of the nature, extent, and scope of state and local tort liability and the procedural requisites for prosecuting tort claims against governmental agencies" (Wright v State of New Jersey, 169 NJ 422, 435, 778 A2d 443, 450 [NJ 2001]). It contains the entirety of New Jersey's abrogation of its immunity from suits within its borders and provides that "[t]ort claims under this act shall be heard by a judge sitting [*6]without a jury or a judge and a jury where appropriate demand therefor is made in accordance with the rules governing the courts of the State of New Jersey." With respect to Eleventh Amendment waiver, the statute is not an express consent to suit in federal court (Hyatt v County of Passaic, 340 Fed Appx 833, 837 [3d Cir 2009] ; Ritchie v Cahall, 386 F Supp 1207, 1209-1210 [D NJ 1974]). Recognizing that this interpretation is limited to suits in federal court, plaintiff argues that New Jersey's consent to suits in its own courts should be deemed consent to suits in a sister state's courts. In support of this argument, he cites several New York actions brought against New Jersey Transit involving claims for personal injuries sustained in vehicular collisions involving its vehicles (see Coronel v New Jersey Tr. Corp., 173 AD3d 828 [2d Dept 2019]; Zielinski v New Jersey Tr. Corp., 170 AD3d 927 [2d Dept 2019]; Fofana v New Jersey Tr. Corp., 146 AD3d 443 [1st Dept 2017]; Fetahu v New Jersey Tr. Corp., 167 AD3d 514 [1st Dept 2018], modfg 59 Misc 3d 1229[A], 2018 NY Slip Op 50801[U] [Sup Ct, NY County 2018]). Reliance on these cases is misplaced for the simple reason that New Jersey's consent to suit in any forum was not at issue therein. As for Colt v New Jersey Tr. Corp. (2020 NY Slip Op 33260[U] [Sup Ct, NY County 2020]), the issues are identical to those we are addressing on this appeal.
Plaintiff's argument overlooks two inextricably intertwined principles of the sovereign immunity doctrine — the claims a state has consented to be sued for and the forum where the suits are to be heard. The New Jersey Tort Claims Act provides no consent to suits in federal courts (Hyatt v County of Passaic, 340 Fed Appx at 837; Ritchie v Cahall, 386 F Supp at 1209-1210). If the statute is insufficient to be deemed consent amounting to a waiver of suits in federal courts pursuant to the Eleventh Amendment, then it is equally insufficient to be deemed consent to suits in a sister state. Intra-state consent to suits cannot be deemed consent to inter-state suits. If a state's consent to be sued in its own courts were deemed consent to be sued in sister states' courts, then consent, imbued with significant constitutional consequences, would be universal. States with Tort Claims Acts would be subject to suits in a sister court, with liability limited to whatever their respective statutes provided for.[FN6] Hyatt's clear pronouncement that a state must provide express consent to suit in a sister state would be rendered meaningless. We hold that New Jersey's consent to suits in its state courts under its Tort Claims Act is not an express consent to suit in courts of a sister state and therefore fails to satisfy Hyatt's constitutional demand. The statute is not a basis for a finding that New Jersey Transit consented to this New York action.
The inquiry is not at an end. Consent is but one form in which a state permits itself to be subject to suits in another state. In the context [*7]of the Eleventh Amendment immunity, the Supreme Court has held that because sovereignty is jurisdictional in nature (F.D.I.C. v Meyer, 510 US 471, 475 [1994]; see also Trepel v Hodgins, 183 AD3d 429 [1st Dept 2020]) it can be waived (Lapides v Board of Regents of the Univ. System of Georgia, 535 US 613, 618 [2002]; College Sav. Bank v Florida Prepaid Postsecondary Educ. Expense Bd., 527 US 666, 675-676 [1999]). However, waiver of sovereign immunity must be express and unambiguous (see Edelman v Jordan, 415 US at 657).
"The classic description of an effective waiver of a constitutional right is the intentional relinquishment or abandonment of a known right or privilege. Courts indulge every reasonable presumption against waiver of fundamental constitutional rights. State sovereign immunity . . . is constitutionally protected. And in the context of federal sovereign immunity . . . it is well established that waivers are not implied. We see no reason why the rule should be different with respect to state sovereign immunity." (College Sav. Bank, 527 US at 682 [internal quotation marks, citation, and emphasis omitted]).[FN7] We find that these waiver principles are equally applicable to resolving inter-state sovereign immunity disputes.
Notwithstanding the strict parameters governing a waiver of a state's sovereign immunity, a state may still be deemed to have waived its immunity by voluntarily invoking a court's jurisdiction (see College Sav. Bank, 527 US at 675-676) or by its litigation conduct in that court (see Lapides v Board of Regents of the Univ. System of Georgia, 535 US 613). Although the principle of waiver was recognized throughout the two decades during which the Hyatt case was litigated, the Hyatt Court apparently declined to address it because California had "raised an immunity-based argument from [the] suit's inception" (Hyatt, 139 S Ct at 1491 n 1). Under these circumstances, waiver of inter-state sovereign immunity is unresolved. The issue of what constitutes a waiver, which necessarily is factual in nature, is ripe for resolution.
There is no dispute that New Jersey Transit did not make a voluntary appearance in this action. It then argues that it made no clear statement by its litigation conduct that it was submitting to the jurisdiction of the courts of this state, pointing out that it has taken a defensive posture from this action's inception because it had no legitimate legal basis for objecting to New York's jurisdiction until seven years after the action was commenced, when Hyatt was decided, in 2019. These arguments are an oversimplification of this substantive constitutional issue. The issue is whether New Jersey Transit undertook a litigation strategy that can be deemed a voluntary waiver of its sovereign immunity. Lapides v Board of Regents of the Univ. System of Georgia (535 US 613 [2002], supra), is instructive.
In Lapides, a professor employed by the Georgia state university system commenced an action in Georgia state [*8]court asserting state tort claims, pursuant to Georgia's Tort Claims Act, and a civil rights claim under 42 USC § 1983. All the state defendants agreed to have the action removed to federal district court, where they moved to dismiss the action. While conceding that the state had waived its sovereign immunity from lawsuits in state court, the defendants argued that by virtue of the Eleventh Amendment the state remained immune from suit in federal court. The District Court held that by removing the case from state to federal court the state waived its Eleventh Amendment immunity and denied the motion. The Court of Appeals for the Eleventh Circuit reversed, finding that it was unclear whether the state's attorney general had the legal authority to waive the state's Eleventh Amendment immunity, and that therefore the state retained the legal right to assert its immunity even after removal. The Supreme Court reversed.
The Court framed the issue as whether a state waives its sovereign immunity when it removes a case from state court to federal court. It observed that "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its voluntary act by invoking the prohibitions of the Eleventh Amendment" (535 US at 619 [internal quotation marks, citations, and emphasis omitted]), and concluded that, although the State of Georgia had been brought involuntarily into the case as a defendant in the state-court proceedings, it had then agreed to remove the case to federal court, thereby voluntarily invoking the federal court's jurisdiction (id. at 620). The Court explained that:
"an interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity'. . . . The relevant 'clarity' here must focus on the litigation act the State takes that creates the waiver" (id. at 620).
The Court rejected Georgia's argument that its motive for removal was benign, i.e., not to obtain litigation advantages for itself, but to provide its codefendants, the officials sued in their personal capacities, with the generous interlocutory appeal provisions available in federal, but not in state, court.
"A benign motive . . . cannot make the critical difference for which Georgia hopes. Motives are difficult to evaluate, while jurisdictional rules should be clear. To adopt the State's Eleventh Amendment position would permit States to achieve unfair tactical advantages, if not in this case, in others. And that being so, the rationale for applying the general 'voluntary invocation' principle is as strong here, in the context of removal, as elsewhere." (id. at 621 [citations omitted]). The Court also rejected Georgia's argument that states would have[*9]"to guess what conduct might be deemed a waiver in order to avoid accidental waivers," stating that its rule was "clear" and easily applied, i.e., "that removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation . . . in a federal forum" (id. at 623-624). Thus, under Lapides, in determining the "clarity" of a state's waiver of its sovereign immunity through litigation conduct, a court must bear in mind the need to avoid inconsistency, anomaly, unfairness, and unfair tactical advantages, all concerns equitable in nature. We find that this reasoning is surely applicable to the resolution of our issue.
The record is clear that New Jersey Transit did not place plaintiff or the court on notice of its sovereign immunity defense by asserting it in its responsive pleading, and only raised the defense seven years after the action's commencement, ostensibly based on the Hyatt decision. In addition, New Jersey Transit moved for orders of preclusion due to plaintiff's lack of cooperation in discovery, sought on two separate occasions to strike plaintiff's newly pleaded injuries, and successfully moved for a mistrial after such evidence was presented at the first trial. Further, although it opposed plaintiff's motion for summary judgment on liability, New Jersey Transit conceded liability prior to trial, leaving damages as the sole remaining issue.
We reject New Jersey Transit's argument that the sovereign immunity defense was not available at the time it served its answer in this action. The doctrine of sovereign immunity as it applies to states has been available at least since the Supreme Court decided Hall (440 US 410) in 1979. The Hyatt Court dramatically altered the sovereign immunity analysis by moving the decision as to whether sovereign immunity should be honored from the forum state, guided by principles of comity, to the sister state being sued, which will decide, as a matter of discretion, whether to consent to the forum state's jurisdiction. Hyatt did not, however, give birth to the doctrine. We cannot help but see the obvious unfair tactical advantage of conceding liability and losing at the first trial on damages and then seeking dismissal of the second trial on damages several years later, based not on the merits of the action but on an alleged "new" defense of sovereign immunity. We note that plaintiff's action, through no fault of his own, is now time-barred and that New Jersey Transit was unwilling to waive its statute of limitations defense in the event plaintiff re-filed his negligence action in the New Jersey courts.
We find that these circumstances are not the kind of case-specific costs that Hyatt deemed insufficient to resolve an important constitutional question (see Hyatt, 139 S Ct at 1499). They, instead, amount to substantial reliance interests that compel their consideration (id.). Applying the equitable factors enunciated in Lapides, and weighing [*10]the facts herein, we find that, on balance, New Jersey Transit's litigation conduct induced substantial reliance on that conduct by plaintiff and our courts, and is inescapably a clear declaration to have our courts entertain this action. Under these circumstances, we hold that New Jersey Transit's litigation conduct in this action is an affirmative invocation of our courts' jurisdiction and should be deemed a waiver of its sovereign immunity so as to provide our courts with subject matter jurisdiction over the action.
Accordingly, the order of the Supreme Court, New York County (Robert R. Reed, J.), entered on or about January 17, 2020, which denied defendants' motion to dismiss the action, should be affirmed, without costs.
Order, Supreme Court, New York County (Robert R. Reed, J.), entered on or about January 17, 2020, should be affirmed, without costs.
Opinion by Oing, J. All concur.
Kern, J.P., Oing, Singh, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
Order, Supreme Court, New York County (Robert R. Reed, J.), entered on or about January 17, 2020, should be affirmed, without costs.
Opinion by Oing, J. All concur.
Kern, J.P., Oing, Singh, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 3, 2021



Footnotes

Footnote 1: New Jersey Transit's sought the following reliefs: precluding plaintiff from offering proof because of his failure or refusal to supply authorizations for trial subpoenas; issuing a conditional order giving plaintiff ten days to produce such authorizations and granting defendant thirty days to process such authorizations with subpoenas; adjourning or continuing the current scheduled May 18, 2016 jury selection date in that the plaintiff's refusal to supply authorizations has caused the defendants prejudice in their trial preparation; or adjoining or continuing the May 18, 2016 trial date for 30 days to allow defense counsel to get medical treatment or locate substitute trial counsel.

Footnote 2: On appeal, plaintiff concedes that New Jersey Transit is "an arm of the state." As an arm of the State of New Jersey, New Jersey Transit is entitled to assert sovereign immunity as a basis to dismiss this action (see Karns v Shanahan, 879 F3d 504, 512 [3d Cir 2018]). We also note New Jersey Transit's concession of liability as to Petosa, defendant bus driver, amounts to an admission that his acts were perpetrated in his official capacity, rather than individually. Thus, Petosa is also entitled to invoke this immunity (see id. at 519 n 5).
Footnote 3: Plaintiff argues that Hyatt is inapposite to the resolution of this appeal because it is factually distinguishable from the facts herein. Contrary to plaintiff's contention, the claimed tortious conduct forming the basis of liability in Hyatt and in this action occurred in the respective forum states.
Footnote 4: Prior to Hyatt, the case had been before the Supreme Court on two other occasions. In Franchise Tax Bd. of California v Hyatt, 538 US 488 (2003), the Board claimed that the Full Faith and Credit Clause required the Nevada court to apply California law and immunize the Board from liability. California law provided immunity for all injuries committed in the tax collection context, while Nevada law provided immunity for negligence, but not intentional torts committed therein. Under general principles of comity, the Nevada court held that the Board was only entitled to the same immunity Nevada afforded its own agencies. The Supreme Court affirmed and held that the Full Faith and Credit Clause did not preclude Nevada from applying its own immunity law to the case. In Franchise Tax Bd. of California v Hyatt, 578 US __, 136 S Ct 1277 (2016), the Nevada court decided that it would not apply the $50,000 monetary cap applicable to its own officials to the Board's tort liability, but reduced a $490 million jury award in Hyatt's favor to $1 million. The Supreme Court reversed and held that the Full Faith and Credit Clause required the Nevada court to give the Board the same immunity that its own agencies enjoy, capping liability for torts at $50,000.

Footnote 5: New Jersey enacted the statute in response to its judiciary's abrogation of its sovereign immunity to suits in the state (see Bombace v Newark, 125 NJ 361, 372 [1991] ["the Act was clearly intended to reestablish a system in which immunity is the rule, and liability the exception"]).

Footnote 6: Alabama and Arkansas are the only states that do not have a Tort Claims Act.

Footnote 7: Plaintiff's argument that New Jersey Transit's operation of its vehicles on New York roads is a voluntary act that amounts to a waiver of its sovereign immunity has been rejected (see College Sav. Bank, 527 US at 691). There can be no constructive or implied waiver where a fundamental constitutional right is at stake (id. at 678).